ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,          :

          -v.-                     :

LACY DOYLE,                        :

          Defendant.               :

- - - - - - - - - - - - - - - - - -x

**JUDGE CARTER**

**SEALED INDICTMENT**

16 CRIM 506

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUL 2 8 2016

## COUNT ONE

(Obstructing and Impeding the Due Administration
Of the Internal Revenue Laws)

The Grand Jury charges:

### Introduction

1.   At all times relevant to this Indictment, LACY DOYLE, the defendant, was a citizen of the United States.

2.   From at least in or about 1998 through at least in or about 2011, LACY DOYLE, the defendant, resided in New York, New York.  In or about 2012, DOYLE resided in Sag Harbor, New York.

3.   From in or about 1999 through in or about 2012, LACY DOYLE, the defendant, was an art consultant for an art consulting firm that she owned, Artview NYC, LLC.

4.   In or about 1984, LACY DOYLE, the defendant, married another individual ("the Spouse").  DOYLE and the Spouse separated in or about June 2006, and divorced in or about 2009.

5.    At all times relevant to this Indictment, Beda Singenberger ("Singenberger") was a citizen and resident of Switzerland.    A certified public accountant, Singenberger owned, operated, and controlled a financial advisory firm called Sinco Treuhand AG ("Sinco"), which maintained its principal place of business in Zurich, Switzerland.    Acting directly and indirectly through Sinco and its employees, Singenberger provided wealth management and tax advice to individuals around the world, including to U.S. taxpayers living in the Southern District of New York.    That management and tax advice included opening and maintaining, on behalf of clients, secret foreign bank accounts.

## Obligations of United States Taxpayers
## With Respect to Reporting Income and Foreign Financial Accounts

6.    Citizens and residents of the United States who have income in any one calendar year in excess of a threshold amount ("U.S. taxpayers") are obligated to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year with the Internal Revenue Service ("IRS").    On such returns, U.S. taxpayers are obligated to report their income from any source, regardless of whether the source of their income is inside or outside the United States.    In addition, on Schedule B of Form 1040, the taxpayer must indicate whether "at any time during [the relevant calendar year]" the taxpayer had "an interest in or a signature or other authority

over a financial account in a foreign country, such as a bank account, securities account, or other financial account." If the taxpayer answers that question in the affirmative, then the taxpayer must indicate the name of the particular country in which the account is located. At all times relevant to this Indictment, LACY DOYLE, the defendant, was a U.S. taxpayer.

7.     Similarly, fiduciaries of a domestic decedent's estate or trust with income in any one calendar year in excess of a threshold amount are obligated to file a U.S. Individual Income Tax Return, Form 1041 ("Form 1041"), for that calendar year with the Internal Revenue Service ("IRS"). On such returns, fiduciaries are obligated to report the trust or estate's income from any source, regardless of whether the source of the income is inside or outside the United States. In addition, the fiduciary must indicate whether "at any time during [the relevant calendar year]" the estate or trust had "an interest in or a signature or other authority over a bank, securities, or other financial account in a foreign country." If the fiduciary answers that question in the affirmative, then the fiduciary must indicate the name of the particular country in which the account is located.

8.     Separate and apart from the obligation to file Forms 1040, U.S. taxpayers who have a financial interest in, or signature or other authority over, a bank, securities, or other

financial account in a foreign country with an aggregate value of more than $10,000 at any time during a particular calendar year are required to file with the U.S. Department of the Treasury a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR"). The FBAR for any calendar year is required to be filed on or before June 30 of the following calendar year. The FBAR requires that the filer identify the financial institution with which the account is held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year for which the FBAR is being filed.

9. An "undeclared account" is a bank, securities, or other financial account maintained outside the United States and beneficially owned by a U.S. taxpayer, but that was not disclosed to the IRS on Schedule B of Form 1040 or on an FBAR and the income generated in which was not reported to the IRS on Form 1040.

### Foreign Banks at Which
### the Defendant Had Undeclared Accounts

10. At all times relevant to this Indictment, Credit Suisse was a bank organized under the laws of Switzerland with its headquarters in Zurich, Switzerland. Credit Suisse provided private banking, asset management, and other services to individuals and entities around the world.

4

11.   At all times relevant to this Indictment, Foreign Bank A was a bank organized under the laws of the United Kingdom with its headquarters in London and affiliated entities and/or branches in France and other countries.   Foreign Bank A provided private banking, asset management, and other services to individuals and entities around the world.

12.   At all times relevant to this Indictment, Foreign Bank B was a bank organized under the laws of Switzerland with its headquarters in Basel, Switzerland.   Foreign Bank B provided private banking, asset management, and other services to individuals and entities around the world.

13.   At all times relevant to this Indictment, Foreign Bank C was a bank organized under the laws of Luxembourg with its headquarters in Strassen, Luxembourg, and affiliated entities and/or branches in Switzerland and other countries. Foreign Bank C provided private banking, asset management, and other services to individuals and entities around the world.

14.   At all times relevant to this Indictment, Foreign Bank D was a bank organized under the laws of Switzerland with its headquarters in Zurich, Switzerland.   Foreign Bank D provided private banking, asset management, and other services to individuals and entities around the world.

### LACY DOYLE's Corrupt Efforts to Obstruct
### and Impede the Due Administration of the IRS

15. Beginning in or about 1989, and continuing through in or about 2012, LACY DOYLE, the defendant, executed and endeavored to execute a corrupt endeavor to obstruct and impede the due administration of the IRS through various means and methods, including, among others, the following:

    a. Opening and maintaining, and causing to be opened and maintained, at least six foreign banks accounts in order to conceal foreign assets and income, including assets exceeding approximately $3.5 million;

    b. Creating and maintaining, and causing to be created and maintained, offshore entities in order to conceal foreign assets and income, including assets exceeding approximately $3.5 million;

    c. Enlisting Singenberger and his associates to provide various financial and legal services in order to conceal foreign assets and income and surreptitiously transfer money from undeclared foreign accounts and entities to DOYLE, both in New York City and abroad;

d. Falsely omitting, on Forms 1040 DOYLE signed under penalty of perjury and filed with the IRS, interest and other income earned from undeclared foreign bank accounts;

e. Falsely claiming, on Forms 1040 DOYLE signed under penalty of perjury and filed with the IRS, that she did not have signatory authority or other control of foreign financial accounts; and

f. Failing to file annual FBARs with the IRS, identifying the financial institutions with which the financial accounts over which DOYLE had signatory authority or control were held, the types of accounts (either bank, securities, or other), the account numbers, and the maximum value of the accounts during the calendar years for which the FBARs were being filed.

### Foreign Bank A Account 1

16. In or about 1989, LACY DOYLE, the defendant, and the Spouse opened, and caused to be opened, a joint bank account in Paris, France, at a bank which was later acquired by Foreign Bank A ("Foreign Bank A Account 1").

17. LACY DOYLE, the defendant, relinquished her interest in Foreign Bank A Account 1 on or about February 6, 2009.

## Credit Suisse Account 1

18. On or about April 21, 1995, the Spouse opened, and caused to be opened, a bank account in Lugano, Switzerland, at Credit Suisse ("Credit Suisse Account 1"). At the time of the opening of that account, LACY DOYLE, the defendant, was given signatory authority and power of attorney over the account, and Credit Suisse was directed to refrain from mailing documents concerning Credit Suisse Account 1 for the purposes of concealing the existence of Credit Suisse Account 1 from the United States Government.

19. The approximate value of Credit Suisse Account 1 was as follows on or about the dates listed below:

| Date | Amount |
|------|--------|
| 05/06/2004 | $88,070 |
| 12/31/2004 | $77,997 |
| 12/31/2005 | $69,660 |
| 05/10/2006 | $69,944 |
| 04/27/2007 | $59,328 |
| 12/31/2007 | $48,178 |

20. LACY DOYLE, the defendant signed the following written directives with respect to Credit Suisse Account 1, in substance and in part:

a. On or about May 30, 2001, DOYLE directed Credit Suisse to invest the liquid assets in Credit Suisse Account 1 in a Credit Suisse bond fund.

b. On or about November 30, 2004, DOYLE directed a banker at Credit Suisse by letter to make two wire transfers, one in the amount of approximately $9,849 and another in the amount of approximately $9,934, from Credit Suisse Account 1 to Foreign Bank A Account 1, and to make these transfers one week apart from each other.  In that letter, DOYLE also directed a banker at Credit Suisse to transfer approximately $9,899 from "the big account" to Credit Suisse Account 1.

c. On or about August 31, 2005, DOYLE directed a banker at Credit Suisse by letter to wire approximately €7,000 from Credit Suisse Account 1 to Foreign Bank A Account 1.  In that letter, LACY DOYLE referred to Credit Suisse Account 1 as "our joint account."

d. On or about December 27, 2006, DOYLE directed a banker at Credit Suisse by letter faxed from a location in New York, New York to wire approximately €9,800 from Credit Suisse Account

1 to Foreign Bank A Account 1.  In the letter, LACY DOYLE referred to Credit Suisse Account 1 as "our joint account."

21.  In or about 2007, the Spouse met with a Credit Suisse banker in New York, New York, to discuss Credit Suisse Account 1.

22.  In or about August 2008, as part of the Spouse's separation from LACY DOYLE, the defendant, the Spouse directed Credit Suisse to cancel DOYLE's power of attorney with respect to Credit Suisse Account 1.

23.  Credit Suisse Account 1 was closed in or about June 2009.

## The Defendant's Use of the Gestino Foundation to Hold Undeclared Foreign Accounts

24.  On or about February 9, 2003, the father (the "Father") of LACY DOYLE, the defendant, passed away.  DOYLE was appointed executor of the Father's estate.

25.  On or about June 19, 2003, in her capacity as executor of the Father's estate, LACY DOYLE, the defendant, filed a document with the Superior Court of the State of California falsely stating under penalty of perjury, in substance and in part, that the total value of the Father's estate was $915,715.30 when, in truth and fact, it was in excess of $4,000,000.

10

26.     On  or  about  June  20,  2004,  in  her  capacity  as
executor  of  the  Father's  estate,  LACY  DOYLE,  the  defendant,
filed  and  caused  to  be  filed  a  Form  1041  with  the  IRS  for  the
Father's  estate  stating  that  the  Father's  estate  did  not  have  an
interest  in  or  signature  or  other  authority  over  a  financial
account  in  a  foreign  country.

27.     On  or  about  January  25,  2006,  LACY  DOYLE,  the
defendant,  established,  and  caused  to  be  established,  a
foundation  under  the  laws  of  Liechtenstein,  which  was  named  the
"Gestino  Stiftung"  (the  "Gestino  Foundation").   DOYLE  provided,
and  caused  to  be  provided,  her  U.S.  Passport  in  connection  with
the  establishment  of  Gestino  Foundation.   Documents  signed  by
DOYLE  relating  to  the  establishment  of  the  Gestino  Foundation
provided  as  follows,  in  substance  and  in  part:

> a. DOYLE  instructed  that  the  Gestino  Foundation  be
> set  up  as  a  foundation  under  the  laws  of
> Liechtenstein;

> b. the  members  of  the  Gestino  Foundation's  board
> of  directors  would  be  "Beda  A.  Singenburger,
> Zurich"  and  another  individual  ("Board  Member
> 1"),  and  the  entity  "Allgemeine
> Repraesentationsanstalt"  was  to  be  appointed  as
> a  representative  of  the  Gestino  Foundation.

      c. the board of directors was to open a bank account with Credit Suisse, in Zurich, for the purpose of holding foundation assets;

      d. the Gestino Foundation's assets were to consist of an inheritance of $4.2 million from DOYLE's father;

      e. DOYLE was "personally . . . entitled to the assets to be brought into [Gestino Foundation]" and that she "was not act[ing] in trust for third parties";

      f. DOYLE was the beneficial owner of the Gestino Foundation; and

      g. the Gestino Foundation was established for purported "Assets Management" and "Estate Planning" purposes.

28. On or about February 6, 2006, by-laws for the Gestino Foundation were issued. Those by-laws stated, in substance and in part, that the sole beneficiary of all assets for the Gestino Foundation was LACY DOYLE, the defendant; the beneficiaries of the Gestino Foundation following DOYLE's death would be her two children (together, the "Doyle Children"); and that during DOYLE's lifetime "all claims to the assets of the Foundation and on earnings derived therefrom shall be exclusively hers to the extent that she is entitled wholly or

partially to dispose of her entitlement by means of informal written instructions."

29.  Between in or about 2007 and in or about 2010, Singenberger provided to one of his U.S. taxpayer clients a document (the "Singenberger Client List") containing significant details regarding clients and prospective clients who were U.S. taxpayers (including LACY DOYLE, the defendant), including:

 a. the U.S. taxpayers' last names and, in some cases, first names;

 b. their places of residence;

 c. the dates and places of Singenberger's last meeting with the U.S. taxpayers;

 d. the names of the entities through which the U.S. taxpayers held their accounts;

 e. the jurisdictions under whose laws these entities were formed, such as Hong Kong or Liechtenstein;

 f. the date of by-laws established for the entities;

 g. the names of the Swiss banks at which the entities held the U.S. taxpayers' accounts, including Credit Suisse; and/or

13

          h.   the   names   of   the   client   advisors   who serviced the U.S. taxpayers' accounts at the identified Swiss banks.

The Singenberger Client List's references to DOYLE included, in substance and in part, the name of DOYLE's foundation ("Gestino Stifting"); that the foundation had been formed under the laws of Liechtenstein on behalf of "Doyle Lacy," who was a resident of New York, New York; and that Singenberger had last met with DOYLE in New York on March 9, 2007.

30. On or about May 15, 2007, the Gestino Foundation informed Credit Suisse that the beneficial owners of deposits held by the Gestino Foundation at Credit Suisse were the Doyle Children.

31. On or about March 18, 2008, LACY DOYLE, the defendant, testified in a deposition in New York, New York in connection with her pending divorce. During that deposition, DOYLE admitted, in substance and in part, that in the late 1990s DOYLE provided the Father with the contact information of a Credit Suisse banker in Switzerland, and that the Father thereafter established an account with Credit Suisse for the purpose of transferring money to the Doyle Children. DOYLE nonetheless claimed, in her sworn testimony, in substance and in part, that she did not know if the Credit Suisse account established by the Father, who died in 2003, still existed; that

only a Credit Suisse banker in Switzerland would have knowledge of the status of that account; and that DOYLE did not know whether a trust was involved in managing the money that the Father had placed in the account for the Doyle Children. DOYLE also testified, in substance and in part, that she believed Credit Suisse would ensure that the Doyle Children would be given the money from that account when it was due to them.

32. On or about December 31, 2008, the value of the Credit Suisse account held by the Gestino Foundation was approximately $3,548,380, including bonds, equities, and other investments.

33. Between 2009 and 2010, LACY DOYLE, the defendant, caused Singenberger to make a series of wire transfers from a Gestino Foundation bank account at Foreign Bank B, to DOYLE, including transfers on or about the following dates in the following approximate amounts:

| Date | Amount |
| --- | --- |
| 07/16/2009 | €9,506.59 |
| 08/05/2009 | €9,206.55 |
| 10/06/2009 | €8,906.62 |
| 01/18/2010 | €8,906.79 |
| 02/15/2010 | €8,906.82 |
| 03/15/2010 | €8,906.88 |

34. On or about December 31, 2009, the Gestino Foundation maintained approximately $3,432,742.08 in assets, including bonds, equities, and other investments, in a Foreign Bank B account.

35.   On or about May 10, 2010, Singenberger and Board Member 1, who together constituted the board of the Gestino Foundation, held a board meeting in Liechtenstein during which they elected to re-domicile the Gestino Foundation from Liechtenstein to the Republic of Panama.

36.   On or about May 31, 2010, the Gestino Foundation maintained approximately $3,151,961.37 in assets, including bonds, equities, and other investments, in a Foreign Bank C account.

37.   In or about June 2010, the Gestino Foundation was formally re-domiciled under the laws of the Republic of Panama.

38.   On or about November 5, 2012, Singenberger provided Foreign Bank D with paperwork relating to the opening of an account to be held by a "Stiftung" foundation in Panama, with the settlor of the foundation being LACY DOYLE, the defendant, and the beneficiaries of the foundation being the Doyle Children.

39.   On or about November 22, 2012, by-laws for the re-domiciled Gestino Foundation were issued.   Those by-laws stated the following, in substance and in part:

a. The sole beneficiaries of all assets for the Gestino Foundation were the Doyle Children;

    b. The beneficiaries of the Gestino Foundation in case of the death of both Doyle Children would be LACY DOYLE, the defendant;

    c. The signatories to the bylaws were Singenberger, who was listed as president; a second individual (the "Treasurer"), who was listed as treasurer; and a third individual (the "Secretary"), who was listed as secretary.

### Foreign Bank A Account 2

40. From in or about 2008 and through in or about 2011, LACY DOYLE, the defendant, maintained an account at Foreign Bank A in Paris, France ("Foreign Bank A Account 2").

41. The balance of Foreign Bank A Account 2 was approximately €41,847 on or about December 31, 2010, and approximately €39,405 on or about September 30, 2011.

42. On or about October 21, 2011, after LACY DOYLE, the defendant, arrived at John F. Kennedy International Airport ("JFK") in New York City on a flight from Paris, France, U.S. Customs and Border Patrol found the following items in LACY DOYLE's possession:

    a. European currency with an approximate value of $9,700;

b. A document written in French and dated October 20, 2011, reflecting the closing of Foreign Bank A Account 2 and signed by DOYLE; and

c. Documents from a foreign bank ("Foreign Bank E") memorializing a wire transfer of €25,000 on or about October 20, 2011 from DOYLE to an art gallery in Paris, France.

## The Defendant's Tax Returns and FBARs

43.   For each of the calendar years from at least 2004 through 2009, LACY DOYLE, the defendant, filed and caused to be filed with the IRS a Form 1040 ("the Lacy Doyle Tax Returns"). Specifically, LACY DOYLE filed these returns on or about the following dates:

a. September 16, 2005 (tax year 2004);

b. August 16, 2006 (tax year 2005);

c. October 18, 2007 (tax year 2006);

d. October 15, 2008 (tax year 2007);

e. April 15, 2009 (tax year 2008); and

f. April 9, 2010 (tax year 2009).

44.   On each of the tax returns listed above, LACY DOYLE, the defendant, knowingly failed to report as income the dividends, interest, and other income received by DOYLE in one or more bank, securities, and other financial accounts at Credit Suisse, Foreign Bank A, Foreign Bank B, and Foreign Bank C.   In

18

addition, on Schedule B attached to each of the Lacy Doyle Tax Returns, DOYLE falsely stated that she did not have an interest in and signature and other authority over a financial account in a foreign country, when, in truth and in fact, and as DOYLE then and there well knew, DOYLE had an interest in and signature authority over one or more financial accounts in a foreign country.

45.   For each of the calendar years from at least 2004 through 2009, LACY DOYLE, the defendant, failed to file with the U.S. Treasury Department an FBAR disclosing her signatory and other authority over her foreign accounts, including accounts at Credit Suisse, Foreign Bank A, Foreign Bank B, and Foreign Bank C.

## Statutory Allegations

46.   From in or about 1989 through in or about 2012, in the Southern District of New York and elsewhere, LACY DOYLE, the defendant, did corruptly obstruct and impede, and endeavor to obstruct and impede, as set forth above, the due administration of the Internal Revenue Laws.

(Title 26, United States Code, Section 7212(a).)

## COUNT TWO
### (Subscribing to a False and Fraudulent
### U.S. Individual Income Tax Return)

The Grand Jury further charges:

47.   The allegations in paragraphs 1 through 45 of this Indictment are repeated and realleged as though fully set forth herein.

48.   On or about April 9, 2010, in the Southern District of New York and elsewhere, LACY DOYLE, the defendant, did willfully make and subscribe a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for the 2009 tax year, which return was verified by a written declaration that it was made under the penalty of perjury and was filed with the Internal Revenue Service Center, and which return she did not believe to be true and correct as to every material matter in that DOYLE reported that she had no interest in or a signature or other authority over a financial account in a foreign country, when in truth and in fact DOYLE knew she did in fact have an interest in or a signature or other authority over a financial account in a foreign country.

(Title 26, United States Code, Section 7206(1).)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

LACY DOYLE,

Defendant.

SEALED INDICTMENT

16 Cr. _____ (   )

(Title 26, United States Code,
Sections 7212(a) and 7206(1))

PREET BHARARA
United States Attorney.

A TRUE BILL

_____ Foreperson.

—SEALED INDICTMENT, TRUE BILL&
ARREST WARRANT
— MAG. JUDGE RONALD L. ELLIS
—

7-26-16