**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
By:     Alain Leibman, Esq.
      Matthew S. Adams, Esq.
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ  08648-2311
(609) 896-3600
*Attorneys for Defendant Lacy Doyle*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>        **Plaintiff,**<br><br>     **v.**<br><br>**LACY DOYLE,**<br><br>        **Defendant.** | **Crim. No. 16-506 (ALC)** |

## DISCOVERY MOTIONS OF DEFENDANT LACY DOYLE

On the Memorandum:

Alain Leibman, Esq.
Matthew S. Adams, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ........................................................ 1

LEGAL ARGUMENT ...................................................................... 2

POINT I

THE GOVERNMENT SHOULD BE REQUIRED UNDER
RULE 16(A)(1)(e) TO PRODUCE DOCUMENTS AND
OBJECTS MATERIAL TO PREPARING THE DEFENSE ....................... 2

    A.    Illegible and/or redacted documents ..................................... 5

    B.    Non-translated foreign bank and corporate documents ......... 6

    C.    Documents undergirding particular
        allegations in the Indictment ................................................ 7

POINT II

THE GOVERNMENT SHOULD BE DIRECTED TO
IMMEDIATELY PRODUCE BRADY INFORMATION ........................... 14

POINT III

THE GOVERNMENT SHOULD PRODUCE ITS
JENCKS/*GIGLIO* MATERIAL AT LEAST TWO WEEKS
BEFORE TRIAL ............................................................................... 17

POINT IV

THE GOVERNMENT MUST PRODUCE THE PRECISE
STATEMENTS MADE BY FORMER SPOUSE KEVIN
DOYLE REFLECTING COMMUNICATIONS WITH LACY DOYLE
DURING THEIR MARRIAGE SO THAT THE COURT MAY
CONSIDER REMEDIES APPROPRIATE TO VIOLATION OF
DEFENDANT'S MARITAL COMMUNICATIONS PRIVILEGE ................. 18

CONCLUSION ................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland,*
  373 U.S. 83 (1963) ................................................................................ *passim*

*Cheek v. United States,*
  498 U.S. 192 (1991) ........................................................................................5

*Giglio v. United States,*
  405 U.S. 150 (1972) ...................................................................... *passim*

*In re Erie County,*
  546 F.3d 222 (2d Cir. 2008) ...................................................................20, 21

*In re Terrorist Bombings of U.S. Embassies in E. Africa,*
  552 F.3d 93 (2d Cir. 2008) .............................................................................3

*Kyles v. Whitley,*
  514 U.S. 419 (1995) ......................................................................................14

*Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.,*
  2016 WL 4154274 (S.D.N.Y., July 22, 2016) .................................22, 23

*Lewis v. Ct. Comm'r of Correction,*
  790 F.3d 109 (2d Cir. 2015) ..........................................................................14

*United States v. Agurs,*
  427 U.S. 97 (1976) ........................................................................................14

*United States v. Bagley,*
  473 U.S. 667 (1985) ......................................................................................14

*United States v. Espinal,*
  96 F. Supp.3d 53 (S.D.N.Y. 2015) ................................................................18

*United States v. Gil,*
  297 F.3d 93 (2d Cir. 2002) ......................................................................14, 15

*United States v. Gleason,*
  265 F. Supp. 880 (S.D.N.Y. 1967) ................................................................15

*United States v. Jacobs,*
    117 F.3d 82 (2d Cir. 1997),
    *abrogated on oth. grounds, Loughrin v. United States,* 134 S. Ct. 2384 (2014) .................... 22

*United States v. Maniktala,*
    934 F.2d 25 (2d Cir. 1991) ............................................................................................. 4

*United States v. Miller,*
    116 F.3d 641 (2d Cir. 1997) ..........................................................................................3

*United States v. Rom,*
    528 Fed. App'x 24 (2d Cir. 2013) ..................................................................................3

*United States v. Safavian,*
    233 F.R.D. 12 (D.D.C. 2005) .......................................................................................14

*United States v. Smith,*
    629 Fed. App'x 57 (2d Cir. 2015) ..................................................................................3

*United States v. Stein,*
    488 F. Supp.2d 350 (S.D.N.Y. 2007) .............................................................................3

*United States v. Sternstein,*
    596 F.2d 528 (2d Cir. 1979) .....................................................................................5, 17

*United States v. Stevens,*
    985 F.2d 1175 (2d Cir. 1993) .........................................................................................3

*United States v. Syosset Woodbury Rd., Woodbury, NY,*
    71 F.3d 1067 (2d Cir. 1995) ....................................................................................21, 22

*United States v. Taylor,*
    92 F.3d 1313 (2d Cir. 1996) .........................................................................................20

*United States v. Tsoi,*
    1992 WL 147614 (S.D.N.Y., June 16, 1992),
    *aff'd,* 996 F.2d 302 (2d Cir. 1993) ...............................................................................14

**Statutes**

18 U.S.C. § 3500 ..............................................................................................................17, 18

26 U.S.C. § 7206(1) .........................................................................................................1, 4, 5

26 U.S.C. § 7212(a) ............................................................................................................1, 4

31 U.S.C. § 5322 ....................................................................................................................1

**Other Authorities**

Fed. R. Crim. P. 16 .................................................................................................3

Fed. R. Crim. P. 16(a)(1) ........................................................................................2

Fed. R. Crim. P. 16(a)(1)(E) ........................................................................... *passim*

DOJ Criminal Tax Manual (various) ....................................................................4, 5

## Preliminary Statement

The Indictment in this case, returned in July 2016 and initially sealed by the Government, is limited to two charges, but is exceedingly broad in its historical scope, attempting to knit together acts separated by many years.  Count One charges defendant Lacy Doyle with a violation of the IRS obstruction statute, 26 U.S.C. § 7212(a), for allegedly acting over a remarkable 23-year period to "corrupt[ly] endeavor to obstruct and impede the due administration of the IRS."  Count Two charges the only substantive violation contained in the Indictment, an allegation that for the 2009 year only, Doyle signed a Form 1040 federal income tax return which falsely stated that she had no interest in or signature or other authority over a foreign bank account, alleged to be a violation of 26 U.S.C. § 7206(1).

Count One is breathtaking in scope, constituting a mash-up of state law actions which do not amount to federal crimes and alleged violations of federal statutes which are time-barred and so are not substantively charged.  This is all blended with a series of actions taken by Lacy Doyle's ex-husband in opening foreign bank accounts when the family lived in Europe for his business purposes, which accounts he controlled and she did not, as will be shown at trial.  For example, the Indictment alleges that Ms. Doyle, as executor of her father's estate upon his death in California in 2003, failed to report to the State of California in that year that her father had an overseas bank account. (Indictment, ¶¶ 24-25).  There is no allegation that the IRS became aware of this filing or was deceived by this state court filing.  Count One also alleges that Ms. Doyle failed to file Foreign Bank Account Activity Reports, or FBARs, related to foreign accounts, including those opened by her ex-husband (*id.*, ¶¶ 15, 45), again as illustrative of obstructive activity.  However, none of the non-filings are charged criminally under 31 U.S.C. § 5322 because none of the alleged non-filings remain within their applicable statute of limitations.

There is no indication that the IRS even began an investigation of the defendant until 2010, yet Count One charges that she presciently began to obstruct that investigation 21 years earlier. While the defense will in its second stage of substantive motion practice address these and other aspects of the Indictment, we focus here on the discovery denied to the defense by the Government, which is essential to defending against an amorphous and expansive Indictment.

## LEGAL ARGUMENT

**POINT I:** **The Government should be required under Rule 16(a)(1)(E) to produce documents and objects material to preparing the defense**

By letter dated September 9, 2016, the defense reviewed the Indictment against the initial discovery provided by the Government and found numerous allegations ungrounded in any discovery document. *Declaration of Alain Leibman,* ¶ 2 & Ex. 1 ("*Leibman Decl.*"). For example, paragraph 15(a) of the Indictment alleged that Lacy Doyle had "[o]pened and maintain[ed] … at least six foreign bank accounts" but the discovery failed to include account-opening documents necessary to prove, or defend against, such allegations.

Rule 16(a)(1), concerning the Government's discovery obligations in this matter, provides in pertinent part:

> (E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, *if the item is within the government's possession, custody, or control* and:

> (i) *the item is material to preparing the defense*;

> (ii) the government intends to use the item in its case-in-chief at trial; or

> (iii) the item was obtained from or belongs to the defendant (emphasis added).

Rule 16 merely establishes the "base-line requirements for pretrial discovery in a criminal case." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 124 (2d Cir. 2008) (citations omitted). "A federal prosecutor has broad duties to disclose evidence to a defendant in a criminal case." *United States v. Smith*, 629 Fed. App'x 57, 60 (2d Cir. 2015) (*citing Brady v. Maryland,* 373 U.S. 83 (1963) and Rule 16(a)(1)(E)), *cert. den.*, 136 S. Ct. 1684 (2016). "[T]he district court has broad discretion to determine what remedial action, if any, is appropriate" for violations of Rule 16(a)(1)(E). *United States v. Rom*, 528 Fed. App'x 24, 26 (2d Cir. 2013) (*quoting United States v. Miller*, 116 F.3d 641, 681 (2d Cir. 1997)).

The Government is obliged under the Rule not only to turn over its accumulated materials, but to produce such materials if it has the legal right to obtain them from cooperating individuals and entities. *United States v. Stein,* 488 F. Supp.2d 350, 362-63 (S.D.N.Y. 2007). In this case, it is believed that the Government enjoys the cooperation of the defendant's ex-spouse, Kevin Doyle; the standard form of plea agreement or non-prosecution agreement would oblige Kevin Doyle to provide the Government (and he has by this time likely already provided the Government) with any documents in his possession which the Government requests of him. These must be produced under Rule 16(a)(1)(E).

The test for what is "material" under the Rule is not an onerous one for a defendant to meet. Evidence is material to the defense "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Stein,* 488 F. Supp.2d at 357 (citation omitted). Simply put, "[e]vidence ... is material if it could be used to counter the government's case or to bolster a defense." *Ibid.* (*quoting United States v. Stevens,* 985 F.2d 1175, 1180 (2d Cir. 1993)). There need only be "some indication" that the pretrial disclosure of the disputed evidence would

enable the defendant significantly to alter the quantum of proof in his favor. *Ibid.* (*quoting United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991)).

Both charges in the Indictment establish extremely rigorous *mens rea* burdens to be met by the Government at trial. Count One (26 U.S.C. § 7212(a)) requires the Government to prove several essential elements beyond a reasonable doubt: that the defendant (1) in any way corruptly (2) endeavored (3) to obstruct or impede the due administration of the Internal Revenue Code. *Dept. of Justice Criminal Tax Manual*, Section 17.03 (Elements of the Omnibus Clause of Section 7212) (citation omitted) (available at https://www.justice.gov/tax/criminal-tax-manual-1700-26-usc-7212a-omnibus-clause; last viewed on Nov. 7, 2016).[1] To act "corruptly," the DOJ asserts, means to "act with the intent to secure an unlawful advantage or benefit either for oneself or another." *Id.,* Section 17.04 (citations omitted). To "endeavor" means to "effectuate an arrangement or to try to do something, the natural and probable consequences of which is to obstruct or impede the due administration of the Internal Revenue laws." *Id.*, Section 17.05 (citations omitted). Thus, multiple layers of intent permeate the statute.

Likewise, Count Two charges a violation of 26 U.S.C. § 7206(1) (false subscribing) to a single tax return in a single year, 2009. According to the Government's own publication, it must prove beyond a reasonable doubt that: (1) the defendant made and subscribed a return, statement, or other document which was false as to a material matter; (2) the return, statement, or other document contained a written declaration that it was made under the penalties of perjury; (3) the defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and (4) the defendant falsely subscribed to the return, statement, or

---

[1] Reference is made here to the elements of the offenses as reported in the DOJ Criminal Tax Manual for purposes of these motions only. The defense does not adopt these charges, and reserves the right, at the appropriate time, to submit different, additional, or more Second Circuit-appropriate jury charges for the Court's consideration.

other document willfully, with the specific intent to violate the law. *Id.,* Section 12.04 (citations omitted) (available at https://www.justice.gov/tax/criminal-tax-manual-1200-fraud-and-false-statement; last viewed on Nov. 7, 2016). "Section 7206(1) is a specific intent crime requiring a showing of willfulness. Proof of this element is essential, and neither a showing of careless disregard nor gross negligence in signing a tax return will suffice. The Supreme Court has defined 'willfulness' as 'a voluntary, intentional violation of a known legal duty.'" *Id.,* Section 12.09 (internal citations omitted; *citing Cheek v. United States,* 498 U.S. 192, 200 (1991)).

As the Second Circuit has explained, "[t]he critical element in a tax fraud case …is the mental state of the defendant … Courts have repeatedly observed that in such cases the accused as part of his defense is entitled to wide latitude in the introduction of evidence which tends to show lack of specific intent." *United States v. Sternstein,* 596 F.2d 528, 530 (2d Cir. 1979) (citations and internal quotation omitted).

### A.  Illegible and/or redacted documents.

The Government has made two document productions, the first on August 15, 2016 and then a second one on October 25, 2016. *Leibman Decl.,* ¶ 3 & Ex. 2. A number of the documents which were produced were illegible, due to redaction or otherwise. By letter to the Government dated September 9th, we identified those documents specifically, requesting better/clearer copies; these include the following requests:

> (1) "USLD 000027-29 — page 000028 has redactions which render it incompletely legible."
>
> (2) "USLD 000034-36 — page 000035 has redactions which render it incompletely legible."
>
> (3) "USLD 000043-44 … There is also a redaction on page 000044 which renders it incompletely legible."

(4) "USLD 000237 - the quality of this document is poor, rendering it illegible and warranting the production of a replacement copy by the Government that is capable of being reviewed and analyzed by the defense."

(5) "USLD 000478-482 - the quality of these documents is poor, rendering them illegible and warranting the production of a replacement copy by the Government that is capable of being reviewed and analyzed by the defense."

(6) "USLD 000484-493 - the quality of these documents is poor, rendering them illegible and warranting the production of a replacement copy by the Government that is capable of being reviewed and analyzed by the defense."

We move for replacement of these poor-quality copies of documents immediately.

### B.   <u>Non-translated foreign bank and corporate documents</u>.

Central to the Indictment and defense of this case are various bank and corporate records referenced in that Indictment. Yet, the Government produced many documents which appear in German, French, or Italian, and has provided translations for only some of them. The following Government-produced records have been presented solely in their foreign language when translations are essential if the documents are to be understood, much less employed at trial:

(1) "USLD 000037 — the document is written in German and no corresponding translation has been provided to the defense."

(2) "USLD 000[126]-USLD 000132 - the document is written in German and no corresponding translation has been provided to the defense." [*untranslated portion only referenced here*]

(3) "USLD 000133-185 - the document is written in German and no corresponding translation has been provided to the defense."

(4) "USLD 000189-200 - the document is written in German and no corresponding translation has been provided to the defense."

(5) "USLD 000225-226 — the document is written in Italian and no corresponding translation has been provided to the defense."

(6) "USLD 000238-239 - the document is written in German and no corresponding translation has been provided to the defense."

6

(7) "USLD 000378-390 - the document is written in French and no corresponding translation has been provided to the defense."

(8) "USLD 000391-461 - the document is written in French and no corresponding translation has been provided to the defense."

(9) "USLD 000470 - the document is written in French and no corresponding translation has been provided to the defense."

(10) "USLD 000477 - the document is written in French and no corresponding translation has been provided to the defense."

(11) "USLD 000484-493 - ... the documents are written in French and no corresponding translation has been provided to the defense."

(12) USLD 000494-503 – the documents are written in French and no corresponding translation has been provided to the defense [*inadvertently omitted from Sept. 9th letter*].

(13) "USLD 000511-515 - the documents are written in French and no corresponding translation has been provided to the defense."

(14) "USLD 00517-519 - the documents are written in French and no corresponding translation has been provided to the defense."

We request the entry of a bar date sixty (60) days from trial, after which any non-translated documents are barred from use by the Government at trial.

**C.   Documents undergirding particular allegations in the Indictment**

The Indictment alleges that defendant took particular actions in relation to either foreign bank accounts or foreign entities, yet there is a dearth of documents within the Government's production which appear to support these allegations.  Thus, we have requested that the Government produce either those documents which prove the allegation –documents which would fall under the "Government's case-in-chief" and/or "material to the defense" prongs of Rule 16(a)(1)(E) – or which tend to disprove the allegation – which as exculpatory materials would either be "material to the defense" under the Rule or would comprise *Brady* materials.

On the date of the initial status conference in this matter, defense counsel pressed the question of these missing documents, and was advised that the Government possesses no foreign bank account records relating to this case that have not already been provided to the defense. *Leibman Decl.,* ¶ 6.   The prosecutor also stated on that date that the Government has executed no search warrants in connection with this matter.  *Id.,* ¶ 7.

Yet there remain numerous other documents which have not been turned over and which are essential to defense preparation.  Drawing from our largely unanswered letter of September 9th, with the rationale for their production following in *italics*, they are the following:

> (1) "Any documents and objects tending to prove or disprove that defendant herself "creat[ed] and maintain[ed]" any "offshore entities," as alleged in the Indictment, Count One, paragraph 15b."
>
> *The discovery to date relates to a single offshore entity, Gestino Foundation, albeit without clearly indicating how/whether defendant created or maintained it. Par. 15b speaks of multiple, so other, entities for which no documents have been produced.*
>
> (2) "Any documents and objects tending to prove or disprove that defendant "enlisted" Beda Singenberger (Indictment, Count One, paragraph 15c) for any purpose or to achieve any objective, including any documents evidencing an agreement for him to "provide various financial and legal services" of any kind (id.)."
>
> *The Indictment paints Singenberger, a Swiss CPA, as having been instrumental in setting up Gestino Foundation (Indictment, ¶¶ 5, 15, 27), but no documents connecting the defendant to his having been "enlisted" by her have been produced.*
>
> (3) "Any documents and objects tending to prove or disprove that any omission on Forms 1040 signed and filed by defendant with the IRS (Indictment, Count One, paragraph 15d) was made knowingly and/or willfully by her."
>
> *The Government has a high intent/knowledge burden under the charges in the Indictment.  The defense is entitled to any documents tending to prove or disprove that the defendant exhibited that intent/knowledge.*

(4) "Any documents and objects tending to prove or disprove that defendant was for any year from 1995 to 2009, inclusive, knowledgeable of the requirement that an FBAR had to be filed with the IRS, as alleged in the Indictment, Count One, paragraph 15f."

*Similarly, the Indictment alleges that the defendant failed in her legal obligation to file FBARs. Documents either proving or disproving her knowledge of the then-obscure legal requirement are material and their absence exculpatory.*

(5) Documents reflecting "[t]he identity of the unnamed Credit Suisse banker who, as alleged in the Indictment, Count One, paragraph 21, met with Kevin Doyle in or about 2007 to discuss that which has been identified in the Indictment as Credit Suisse Account 1."

*For some reason, the Indictment alleges that the defendant bears responsibility for a foreign bank account which we believe was established by her ex-husband, Kevin Doyle, who is alleged to have met with a banker at Credit Suisse to set up his account. As the Indictment makes that relationship part of the charged scheme, related documents are material to the defense, and the Government is obligated to obtain those documents from Mr. Doyle.*

(6) "Any documents and objects relating to the matters discussed in the meeting with the unnamed Credit Suisse banker referred to in [(5)] above."

*See above.*

(7) "Any account opening documents concerning an account in the name of Kevin Doyle at what became HSBC France, acct. no. xxx337632. (The discovery materials include statements from this account (USLD 000391-461) but not the account opening documents)."

*The Indictment mischaracterizes an HSBC France account set up by Kevin Doyle as an account for which defendant bore reporting responsibility. Discovery has included bank statements, but none of the pivotal account-opening documents which would debunk the Indictment's assertions and constitute Brady information. The Government is obligated to obtain those documents from Kevin Doyle, as its cooperator.*

(8) "Copies of any FBARs filed by the defendant for years 1995 through and including 2015, as well as any IRS/Treasury Department absence of records report or certification as to any of the subject years for which the defendant did not file an FBAR."

*The Indictment alleges that defendant failed to file FBARs but has yet to produce any records certification showing an absence of such filings. Nor has the*

*Government provided exculpatory evidence of actual FBAR filings made by the defendant once she learned of the legal requirement to do so.*

(9) "Any documents and objects tending to prove or disprove that the value of Arthur Davisson's estate was, on or about, June 18, 2003, 'in excess of $4,000,000' as alleged in the Indictment, Count One, paragraph 25, including any documents and objects reflecting the precise components of what the Government alleges comprised the assets of that estate and the values thereof as of that specific time.

*The decades-long expanse of Count One includes the allegation that defendant, as executor of her late father's estate, did not include certain assets in certain estate-reporting filings, but there has been no production of any documents showing the alleged amount/nature of the omitted assets.*

(10) "Any documents and objects tending to prove or disprove that when, as alleged in the Indictment, Count One, paragraph 26, defendant filed and caused to be filed on or about June 20, 2004 a Form 1041 with the IRS in connection with the Arthur Davisson estate, defendant herself: (a) had actual knowledge that the estate had 'an interest in or signature or other authority over a financial account in a foreign country;' and/or (b) had actual knowledge of the particular financial account in question and of the nature of the estate's interest in such account at that specific time."

*See above.  Defendant, as executor, is also alleged in Count One to have had the knowledge that her father's estate had a reportable interest in a foreign account, but no documents have been produced in discovery reflecting any such knowledge by defendant. The absence of such documents would be exculpatory.*

(11) "Any documents and objects tending to prove or disprove that, as alleged in the Indictment, Count One, paragraph 27, the defendant herself 'established and caused to be established' the Gestino Foundation on or about January 27, 2006."

*We have certain Gestino-related documents from the Government.  The defense needs to ascertain if the Government possesses others, and has had no response to this request.*

(12) "Any Government forms either completed or signed by defendant at the time of the border entry at JFK Airport alleged in the Indictment, Count One, paragraph 42."

*The Indictment makes much of an airport stop of the defendant on Oct. 21, 2011 and the seizure of bank records from her at that time, as well as her transportation of currency into the United States.  Disclosure documents completed or signed by the defendant have obvious relevance to the defense of the allegation and the suggestion of any impropriety.*

10

(13) "Any documents and objects reflecting any statements alleged to have been made by defendant at the time of the border entry at JFK Airport alleged in the Indictment, Count One, paragraph 42."

and (14) "Any documents and objects relating to any 'red notice,' 'yellow notice' or other notification(s) to the U.S. Customs and Border Patrol agency in effect as to defendant on or about October 21, 2011, including any application, request, or supporting materials supplied by your Office or the IRS in order to cause such notification(s) to be in effect at that time."

*It cannot be determined whether or not a basis for a suppression motion exists as long as the Government refuses to provide the referenced documents, establishing the legal basis for the defendant's stop at the airport and the seizure from her of various documents.*

(15) "Any documents and objects reflecting the first effective date of the [red notice/yellow notice] notification(s)."

*See above*

(16) "Any documents and objects tending to prove or disprove that defendant had any interaction at all with the preparer of the Forms 1040 and related schedules prepared and filed for any of the tax years listed in the Indictment, Count One, paragraph 43, and, if so, any documents and objects relating to the scope and detail of such interaction(s)."

*The Indictment alleges that over the long course of her marriage to Kevin Doyle, the defendant somehow bore responsibility for income tax returns which she did not prepare and may only have signed at her spouse's direction. So, any documents bearing on defendant's interactions with the tax professional who prepared those returns is material to the defense and would be highly exculpatory. Whether or not the Government possesses these documents, it must obtain them from Kevin Doyle, including notes, correspondence, and emails to/from the preparer.*

(17) "Any documents and objects reflecting the engagement or retention of, or payment for services rendered by, the person(s) responsible for preparing the Forms 1040 and related schedules prepared and filed for any of the tax years listed in the Indictment, Count One, paragraph 43."

*See above. In the same vein, that Kevin Doyle, and not defendant, engaged his own professional to prepare the couple's joint returns is material and potentially exculpatory. Whether or not the Government possesses these documents, it must obtain them from Kevin Doyle, including notes, correspondence, and emails to/from the preparer.*

11

(18)  Any documents and objects relating to any meetings or communications between:

> (i) defendant and any representative of Credit Suisse in the United States at any time.
>
> (ii) defendant and any representative of Credit Suisse outside the United States at any time.
>
> (iii) defendant and Beda Singenberger in the United States at any time.
>
> (iv) defendant and Beda Singenberger outside the United States at any time.
>
> (v) defendant and any representative of Sinco Treuhand AG in the United States at any time.
>
> (vi) defendant and any representative of Sinco Treuhand AG outside the United States at any time.
>
> (vii) defendant and Susanne D. Ruegg Meier in the United States at any time.
>
> (viii) defendant and Susanne D. Ruegg Meier outside the United States at any time.
>
> (ix) defendant and any representative of Gestino Foundation in the United States at any time.
>
> (x) defendant and any representative of Gestino Foundation outside the United States at any time.

*This bank and these persons and entities are alleged in the Indictment, by name or reference, to have interacted with the defendant in unspecified ways to commit the charge offense in Count One.  We are not asking the Government to provide the dates, times, or details of alleged conspiratorial meetings; rather, we insist only on production of related documents, which are decidedly material to the defense.*

(19) "Any agreements, including but not limited to a deferred prosecution agreement, plea agreement, immunity agreement, or non-prosecution agreement, reached between the United States and Credit Suisse since 1995."

*The Government has produced a number of bank records from Credit Suisse, which presumably will be offered in evidence, although not necessarily through a witness from the bank, which has faced the threat of criminal charges in the*

*United States.  The defense seeks documents relating to the above accommodative agreements with the Bank, for use at trial.*

(20) "Any documents and objects concerning the nature of defendant's employment, including scope of duties, at any position or with any employer during the period covered by the Indictment."

*In tax cases, IRS agents typically collect documents reflecting a defendant's employment positions, seeking to demonstrate evidence of knowledge of tax laws. Lacy Doyly is an art consultant, with no known accounting or tax background, so employment-related records collected by the Government will be material to the defense and exculpatory.*

(21) "Any documents and objects concerning any application or request made by or on behalf of Kevin Doyle for entry into any offshore voluntary disclosure program or initiative offered under the auspices of the IRS."

and   (22) "Any documents and objects concerning any application or request made by or on behalf of Kevin Doyle under any whistleblower program offered under the auspices of the IRS."

*The Government's case appears from the Indictment to pivot entirely on Kevin Doyle's version of events, including his description of bank accounts he opened overseas and for which he was primarily, if not entirely, responsible.  It is material to the defense, and could well be exculpatory, to determine if Kevin Doyle's characterization of his activities – made to the IRS under either its voluntary disclosure program for offshore account holders or its whistleblower program – differs in material ways.*

(23) "Any documents and objects obtained from Robert Shaklee, CPA, concerning defendant and/or the 2009 Form 1040 and related schedules prepared by him for defendant for 2009, including without limitation any workpapers, notes, emails, or draft tax returns and schedules."

*We believe that IRS agents seized numerous documents, including notes and workpapers, from the CPA who in 2009 prepared the return alleged in Count Two to have been fraudulent.  The documents are material to the defense and may also be exculpatory.  At this writing, we have twice been promised by the Government that those documents will be produced and do not yet have them*

**POINT II:**     **The Government should be directed to immediately produce**
             ***Brady* information**

"Well-established Supreme Court precedent holds that the prosecution has a clear and unconditional duty to disclose all material, exculpatory evidence ... This duty exists whether or not the defense requests exculpatory evidence.  The Supreme Court has never required a defendant to exercise due diligence to obtain *Brady* material."  *Lewis v. Ct. Comm'r of Correction*, 790 F.3d 109, 121 (2d Cir. 2015) (*citing Brady*; *United States v. Agurs*, 427 U.S. 97 (1976); *United States v. Bagley*, 473 U.S. 667 (1985)).   This obligation extends to all information "material to guilt or punishment," *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002) (*citing Brady*), and the suppression of that information violates due process, irrespective of the good faith or bad faith of the prosecution.  *Kyles v. Whitley,* 514 U.S. 419, 432 (1995) (*citing Brady*).  It matters not at all that exculpatory information is buried within a witness statement which otherwise could be disclosed much closer to trial; evidence which falls under both the Jencks Act and *Brady* may not be withheld, but must under *Brady* be disclosed immediately.  *See United States v. Tsoi,* 1992 WL 147614, at *3 (S.D.N.Y., June 16, 1992) (citation omitted), *aff'd,* 996 F.2d 302 (2d Cir. 1993).

In this pretrial setting – as distinct from reviewing a conviction obtained in violation of *Brady* -- *Brady* is even more supportive of broader disclosure.  As one court has explained, "[t]he prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial. Thus, the government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed -- with the benefit of hindsight -- as affecting the outcome of the trial." *United States v. Safavian,* 233 F.R.D. 12, 15-16 (D.D.C. 2005) (furthermore, under Fed. R. Crim. P. 16(a)(1)(E), requiring production of items material to preparing the defense, the

14

Government must disclose items important to "uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal") (citations omitted).

The defendant does not have to show in advance of trial that the requested information or documentation is itself directly admissible, as *Brady* is not a rule of evidence. It is only necessary that the material "could" lead to admissible evidence. *Gil,* 297 F.3d at 104; *United States v. Gleason,* 265 F. Supp. 880, 886 (S.D.N.Y. 1967) ("[P]rosecution's duty of disclosure as affirmed in *Brady,* cannot be limited to materials or information demonstrated in advance to be 'competent evidence'"), *cited with approval in Gil,* 297 F.3d at 104.

It is stunning that in this 6-year long tax investigation and prosecution, where the Government has the most burdensome intent and knowledge standards of proof to meet, and so where good faith and other intent defenses are so fertile, there has been no voluntary *Brady* disclosure at all. It is inconceivable that no witness and no document seen by the Government has cast doubt on Lacy Doyle's sophistication in matters of tax law and the obscure requirements concerning filing foreign bank account reports. We of course cannot intelligently guess at what exculpatory information and documents are in the possession of the Government or its cooperators. But we have made a number of requests, as specifically formulated as possible, to which we have had no satisfactory response:

> (1) as to Kevin Doyle, the centrality of whom to the defense is obvious from the allegations of the Indictment:
>
>> (a) any and all records of a financial or tax nature as to Kevin Doyle, or Lacy Doyle, or the two of them jointly, which were produced by or obtained from Kevin Doyle or his attorney;
>>
>> (b) U.S. tax returns filed by Kevin Doyle or any entity that he controls for the years 1995 through and including 2015, along with all schedules annexed thereto; and

(c) all FBARs filed by Kevin Doyle for the years 1995 through and including 2015 or, alternatively, any IRS/Treasury Department absence of records report or certification as to any of the subject years for which Kevin Doyle did not file an FBAR.

*Given the centrality of Kevin Doyle's role in this case, evidence which tends to reflect on his greater business/tax sophistication, compared to his spouse, defendant's, lack of sophistication, becomes proportionately more exculpatory. Early disclosure of this Brady material is essential, if the defense is going to be able to adequately investigate and prepare for trial.*

(2) intent and knowledge negation evidence.  This could take many forms; our September 9th discovery request letter suggested the following:

· "any evidence which tends to negate any of the essential elements of the charged offenses, including but not limited to any intent or knowledge elements."

· "any evidence which tends to show the defendant's lack of knowledge or lack of sophistication regarding the internal revenue laws of the United States, [including] academic transcripts; workpapers and notes of tax preparers for the defendant in any year subsumed within the period of the Indictment; and statements of any witness tending to show such lack of knowledge or lack of sophistication.

· "any evidence which tends to show the defendant's lack of knowledge or lack of sophistication regarding the FBAR filing requirement [including] academic transcripts; workpapers and notes of tax preparers for the defendant in any year subsumed within the period of the Indictment; and statements of any witness tending to show such lack of knowledge or lack of sophistication."

*It is remarkable that the Government has thus far made exactly zero Brady disclosures.  It has interviewed at length both the defendant's businessman ex-husband and her tax preparer for the one tax year (2009) charged substantively in this case, and each if truthful will have made multiple statements detailing defendant's lack of tax and accounting knowledge. That the Government does not see such exculpatory information as Brady suggests a complete failure to appreciate its disclosure obligation.*

Additionally, we request:

(3) that the Court conduct a review of the IRS Special Agent's Report (SAR) in this matter to determine if it sets forth (i) any analysis by the Government of the tax loss associated with the offense conducted alleged in the Indictment; and (ii)

16

any exculpatory information, such as the identity of witnesses or their statements tending to show that defendant Lacy Doyle lacked the intent/knowledge necessary to commission of the charged offenses.

*As noted above, the Second Circuit has underscored the importance in any tax fraud case of evidence of the necessary intent/knowledge, and the low barrier for admission by the defense of intent/knowledge negating evidence. The "tax loss" is central to any Sentencing Guidelines analysis and so is evidently "material to punishment" under Brady.*

*As for contraindicative evidence of intent/knowledge, the Second Circuit in Sternstein, 596 F.2d at 531 directed the District Court to examine in camera the SAR in search of such evidence ("the firsthand appraisal of the trial judge is essential in determining the materiality of withheld evidence") (citation omitted). Where, as here, the Government has demonstrated that it does not properly understand its Brady obligation, it is essential that the Court conduct such a review.*

**POINT III:    The Government should produce its Jencks/*Giglio* at least two weeks before trial**

In endeavoring to resolve certain discovery issues with the Government without need for intervention by the Court, the defense previously inquired about the timing of pretrial production of Jencks and *Giglio* material. The Government, by email dated September 9, 2016, advised that it intended to withhold these items until *the Friday before the start of trial*, characterizing this position as the standard in the District.  *Leibman Decl.*, ¶ 4.  Such a delayed, and late, disclosure of essential cross-examination materials is not acceptable to the defense and does not coincide with the practice before the Courts in the Southern District as we understand it.

We ask that the Government be ordered to produce Jencks (also known colloquially as "3500" material, for 18 U.S.C. § 3500) and *Giglio* material two weeks prior to trial.  This disclosure schedule is consistent with what the U.S. Attorney's Office in this District itself has advised defense counsel and courts is its standard practice.  *Leibman Decl.,* ¶ 5 & Ex. 3 (setting forth typical disclosure schedule to which Government adheres, ranging from 17 days to 5 weeks prior to trial, depending on the complexity of the case, with most cases found in the several

17

weeks range).   Even in a mine-run prosecution far simpler than this complex tax case, the

prosecutors in this district typically disclose much earlier than has been proposed here.  *See*

*United States v. Espinal,* 96 F. Supp.3d 53, 66 (S.D.N.Y. 2015) ("[T]he practice in the Southern

District of New York is for the government to produce 3500 (and *Giglio*) material a week or two

before the start of trial, depending on the complexity of the case") (Chin, J., sitting by

designation). The weekend before trial is unacceptable and is decidedly not the practice in this

District, contrary to the representation of the prosecutor.

> **POINT IV:**   **The Government must produce the precise statements made by Kevin Doyle reflecting communications with defendant Lacy Doyle during their marriage so that the Court may consider remedies appropriate to violation of defendant's marital communications privilege**

By letter of September 9th, we requested that the Government produce:

> any statements made by Kevin Doyle in response to questioning from the Government or provided (e.g., as a written proffer or attorney proffer) in response to a request from the Government. We are obliged to examine all such statements to determine if the Government breached, or participated in breaching, or if Kevin Doyle's attorney breached, or participated in breaching, the defendant's marital communications privilege so that an appropriate motion may be filed.

As the Indictment acknowledges, Kevin Doyle and the defendant were married in 1984,

separated in 2006, and were finally divorced in 2009 (¶ 4).  The span of Count One of the

Indictment parallels the length of the marriage, from 1989 to 2012 (¶ 15). The first foreign bank

account mentioned in the Indictment was opened in France by Kevin Doyle in 1989 (¶ 16), when

Kevin found work in publishing in France and defendant Lacy Doyle dutifully moved there to

support her husband's employment pursuits, which eventually took them across Europe, as

Kevin lost and then found different jobs overseas.  Those travels along Kevin Doyle's job hunt

caused Kevin Doyle to open a second foreign account, at Credit Suisse in 1995 (¶ 18).  Kevin

18

Doyle controlled the Credit Suisse account, first granting his wife a power of attorney (¶ 18) and then revoking it when it no longer suited him, finally cancelling defendant's power of attorney in August 2008 when they separated (¶ 22).

The Government's response to our request confirmed the centrality of Kevin Doyle as a witness against his former wife and, more to the point of this motion, the breadth of their marital communications which he has improperly shared with the Government.  But by letter dated October 25th, the Government refused to provide the specific marital-communications laden statements made by Kevin Doyle; rather, the Government only listed broad subject areas of his disclosure, as follows:

> a.      While the Spouse and the defendant were married, they jointly maintained foreign bank accounts that were not declared on their joint tax returns. The Spouse explained to the Government how the Spouse and the Defendant established and used those accounts.
>
> b.      The defendant informed the Spouse that the defendant maintained an individual account at Credit Suisse in Switzerland, and on at least occasion noted that the account was doing well.
>
> c.      The defendant informed the Spouse that the defendant's father (the "Father"), who is now deceased, had money saved away, and that the defendant assisted the Father in establishing an account at Credit Suisse in Switzerland. The Spouse understood that the defendant had the right and ability to access the funds in the Credit Suisse account the defendant helped establish for the Father based on conversations in which the defendant spoke about using funds in that account to buy an apartment for the defendant and the Spouse.
>
> d.      While they were married, the Spouse and the defendant jointly filed personal tax returns in which they answered "no" when asked whether they had foreign accounts, despite the fact that they both knowingly maintained foreign bank accounts. The Spouse knew the Spouse and the defendant were jointly subscribing to false tax returns by doing so, and that this was part of a plan by the Spouse and the defendant to hide foreign accounts and income from the IRS.

*Leibman Decl.,* ¶ 3 & Ex. 2.   This disclosure is inadequate to determine whether the Government breached the marital communications privilege, since a detailed review of the Kevin Doyle statements is necessary to that determination.

"Conversations between spouses are presumed confidential, and … the government [bears] the burden of defeating this presumption by showing that the communication was not made privately." *United States v. Taylor,* 92 F.3d 1313, 1332 (2d Cir. 1996).   The Government argued in its October 25th letter both that defendant had waived her privilege by testifying in a divorce action deposition and that the crime-fraud exception also vitiated her privilege.   Neither argument will prevail on these facts.

The Second Circuit in *In re Erie County,* 546 F.3d 222 (2d Cir. 2008), addressed the same flawed waiver-by-deposition argument in the analogous area of the attorney-client privilege, which similarly requires confidentiality of communication and which can also be vitiated by voluntary disclosure.   In *Erie County,* a § 1983 class action concerning prison strip-search policies, there was deposition testimony from a county supervisor revealing in part confidential communications with the sheriff's office concerning the subject policies.   In analyzing whether the limited deposition testimony breached the privilege, the Court emphasized first that "[u]nderlying any determination that a privilege should be forfeited is the notion of unfairness [, specifically] the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decision maker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *Id.,* at 229 (citation omitted).   And the question whether fairness requires disclosure must be decided on a case-by-case basis, dependent "***primarily on the specific context*** in which the privilege is asserted." *Ibid.* (emphasis added) (citation omitted).

20

The Second Circuit in *Erie County* granted a writ of mandamus, and vacated a district court order which had erroneously held – based on a similarly broad argument to that made by the Government here – that the privilege was breached as to certain email communications simply as a result of the deposition testimony. The Court concluded that there were two alternative reasons why the supervisor's deposition testimony about internal communications did not forfeit the County's ability to continue to assert the privilege. First, a deposition does not take place before a decision-maker or factfinder, and so statements made in a deposition cannot have disadvantaged the adverse party at a forthcoming trial before such a factfinder. *Id.,* at 230 (citation omitted). Second, a close look at the actual statements made by the deponent indicated that the "substance of the attorney-client communications" was not revealed in the testimony. *Ibid.*

So, the fact that defendant Lacy Doyle was compelled to provide an out-of-court discovery deposition in her matrimonial action (as was Kevin Doyle) does not by itself constitute a waiver or forfeiture under *Erie County*. But even if this Court wished to analyze the deposition testimony, it is crucial under the alternative *Erie County* waiver, or forfeiture analysis, to compare very precisely what Kevin Doyle has said about his communications with his then-wife against what the ex-wife, now defendant Lacy Doyle, very precisely said in her deposition. The Government's broad-brush and vague subject matter disclosure is simply inadequate to that task.

As to the crime-fraud exception, the Government cites inaptly in its October 25th letter to the case of *United States v. Syosset Woodbury Rd., Woodbury, NY,* 71 F.3d 1067 (2d Cir. 1995). There, the District Court first addressed the question of waiver of privilege; the court held in a civil forfeiture action, in which the wife of a convicted drug dealer sought to argue that the her solely-owned property was not forfeitable, that the wife's specific deposition testimony about

particular conversations with her husband effected a waiver of her marital communications privilege and so obligated her to testify to additional conversations against her will. The waiver argument, explained the Second Circuit, turns on an analysis of whether the witness's prior statements create a risk of unfairness when the witness later asserts the privilege to shield other statements from disclosure. *Id.,* at 1072. Obliged to uphold the lower court order finding of waiver because it "cannot say" that the district court's conclusion was "unsupported" by the record, and so was not an abuse of discretion, the court of appeals did so with reservation, saying "[i]t is not, in fact, obvious in this case that the truth would be substantially distorted were Mrs. Camiola permitted to limit her testimony [in the way she sought by invoking the privilege]." *Id.,* at 1073.

Turning secondarily to the lower court's alternate finding that the crime-fraud exception compelled disclosure of further spousal communications because they were in furtherance of a drug deal, the Second Circuit rejected that argument, finding that privilege exception to be "not on point" with the facts of the case. *Ibid.* (citation omitted). So, the authority cited by the Government for application of the crime-fraud exception in fact rejected its application.

This Court recently made quite clear that the "crime fraud" exception to a privilege claim "applies only narrowly." *Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.,* 2016 WL 4154274, at *3 (S.D.N.Y., July 22, 2016) (analogous attorney-client privilege). This Court explained that a party -- such as the Government in this case -- which seeks to invoke the "crime fraud" exception "must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." *Ibid.* (*quoting United States v. Jacobs,* 117 F.3d 82, 87 (2d Cir. 1997), *abrogated on other grounds, Loughrin v. United States,* 134 S. Ct. 2384 (2014)). "[T]he

proposed factual basis must strike a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *Ibid.* (internal quotation marks and citations omitted).  Crucially, the "crime fraud" exception *does not* apply to a communication which *merely evidences* a crime or fraud; rather, this Court explained, ***the communication itself has to have been demonstrably intended to facilitate or conceal the crime***.  *Ibid.* (citations omitted) (held that "crime fraud" exception did not apply to the communications in issue).

No evidence has been tendered by the Government showing that Kevin Doyle has admitted participating in the crimes charged in the Indictment, or has entered into a plea agreement.  The Government has refused to provide the detail of Kevin Doyle's statements so that they can be examined against the time line and allegations of the Indictment.  In short, we expect that the Government will be unable to carry its heavy, two-step burden in overcoming the defendant's privilege assertion, but for present purposes we seek only to gain the detail necessary to determine whether a motion is appropriate: what exactly did Kevin Doyle tell the Government was said between he and his wife, defendant Lacy Doyle.

## CONCLUSION

For the foregoing reasons, the defendant requests that the Court direct the Government to

meet its discovery obligations and produce discovery it has failed to disclose, as set forth above.

Respectfully submitted,

**FOX ROTHSCHILD LLP**
*Attorneys for Defendant Lacy Doyle*

By: _____
ALAIN LEIBMAN (Bar # AL8971)

DATED: November 17, 2016

24