

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 22, 2016

**BY ECF**

The Hon. Andrew L. Carter, Jr.
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: United States v. Lacy Doyle, 16 Cr. 506 (ALC)

Dear Judge Carter:

The Government respectfully requests that the Court hold a hearing in this matter pursuant to *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982), in order to address potential conflicts that defense counsel, Alain Leibman, Esq., may have in this matter. Specifically, there are potential conflicts between Mr. Leibman and Lacy Doyle, the defendant, because: (1) the defendant may be able to assert an advice of counsel defense with respect to some of the conduct at issue; (2) defense counsel is a potential sworn witness against his client relating to certain filings made to the IRS; and (3) defense counsel may be an unsworn witness at trial relating not only to any advice of counsel, but also relating to documents he had a hand in creating and events in which he was a first-hand observer and as to which he provided legal counsel. The Government raised these issues with defense counsel, who has informed the Government that he is considering his position and has asked for additional information about the relevant legal authority, which is provided herein.

**Factual Background**

**A. The Initial Concealment of the Defendant's Inheritance.**

The defendant is charged in a scheme to, among other things, establish and maintain a foreign trust, Gestino Stiftung, during the period 2006 through 2012, to hold Swiss bank accounts in order to conceal those bank accounts from U.S. tax authorities and evade U.S. tax obligations. Indictment ¶¶ 24-29, 43-44, 46. The story of that trust begins in 2003, when the defendant's father died and secretly left her an inheritance of over $4 million. *Id.* ¶¶ 24-25, 27. The defendant, who was also executor of her father's estate, made court filings falsely stating under penalty of perjury that the total value of her father's estate was under $1 million when, in truth and fact, it was more than four times that amount. *Id.* ¶¶ 25-27.

In 2006 the defendant enlisted the assistance of Beda Singenberger, a Swiss citizen who ran a financial advisory firm, to open a Swiss bank account into which the secret inheritance was

deposited. *Id.* ¶ 27.[1] To conceal the existence of the Swiss bank account from United States authorities and others, the defendant and Singenberger established a Liechtenstein foundation, "Gestino Stiftung," to hold the Swiss bank account in its name. *Id.* ¶ 27. As of December 31, 2008, the account held currency and financial instruments valued at approximately $3,548,380. *Id.* ¶¶ 32-33.

The defendant used this arrangement to unlawfully and fraudulently avoid paying over $1.5 million dollars in United States taxes resulting from the secret inheritance. In addition, for each of the tax years from 2004 through 2009, the defendant failed to report any income from foreign accounts in her tax filings, and also stated in those filings that she did not have an interest in or signature or other authority over a financial account in a foreign country. *Id.* ¶ 44.

In 2010, Gestino Stiftung was re-domiciled from Lichtenstein to Panama. *Id.* ¶¶ 35, 37. As of May 31, 2010, Gestino Stiftung maintained assets in various Swiss bank accounts in the amount of at least approximately $3,151,961.37. *Id.* ¶ 36.

### B. The Investigation and Information Derived from Mr. Leibman

On or about October 4, 2010, the defendant was alerted to the existence of an investigation into her foreign bank accounts when she was served with a grand jury subpoena (the "2010 Subpoena") seeking certain foreign account records. We understand that the defendant retained Mr. Leibman around that time. But as the indictment alleges and the Government expects to prove at trial, the defendant and her co-conspirators continued to obstruct the IRS through use of the Gestino Stiftung and foreign accounts into at least 2012. *Id.* ¶¶ 38-39. For example, in 2012, Singenberger sought to open a new undisclosed Swiss bank account to hold the defendant's secret inheritance. *Id.* ¶¶ 38-39. During the time period following the service of the 2010 Subpoena, the defendant took certain defensive measures, including invoking the Fifth Amendment in response to the question on her tax returns asking if she had an interest in any foreign bank accounts (instead of responding, as she had previously, "no," to that question); and (b) disclosing for the first time distributions from Gestino Stiftung.[2] *Id.* ¶ 39.

---

[1] Singenberger has since been indicted in this District for conspiring to defraud the U.S. Government, among other offenses. *See* 11 Cr. 620 (LAK).

[2] The Government understands that these defensive measures were taken to limit the defendant's legal exposure by seeking to avoid further demonstrably false affirmative misrepresentations while still continuing the scheme to, among others things, shield the existence and location of the Swiss bank accounts holding the secret inheritance from the IRS through use of the Gestino Stiftung. *See United States* v. *Cunningham*, 723 F.2d 217, 229 (2d Cir. 1983) (holding that continuing actions taken to conceal tax fraud were in furtherance of underlying tax fraud conspiracy because "success of the scheme to defraud depended on the parties' deceit of federal authorities, before and after the filing of the returns, as to the amount of income tax due"); *see also United States* v. *Royer*, 549 F.3d 886, 896 (2d Cir. 2008) (holding that continuing actions taken to conceal underlying fraud conspiracy were acts in furtherance of that conspiracy);

Of particular pertinence here, and an important part of the Government's proof at trial, will be a submission made by the defendant's accountant (the "Accountant") in 2012. In that year, in response to a request by the IRS to the defendant for additional information, the Accountant submitted to the IRS a Form 3520 Annual Return to Report Transactions with Foreign Trusts and Receipt of Foreign Gifts. That form indicated that the defendant had received a total of $49,267 in distributions from Gestino Stiftung in 2010, and that the Gestino Stiftung was located in Panama City, Panama. The Accountant, who submitted the Form 3520 to the IRS, has stated that he learned of the location of the Gestino Stiftung foundation from Mr. Leibman. The Government would expect to establish this information, and its source, at trial, through testimony and through an October 4, 2011, letter from Mr. Leibman to the Accountant providing some (but not all) of the information about the distributions that were disclosed to the IRS.

### C. The Sanctions Proceedings Before Judge Pauley

In 2012, the Government moved to compel compliance with the 2010 Subpoena on the ground that the defendant had no Fifth Amendment right to withhold certain foreign bank records requested by the subpoena. In 2013, Judge Pauley issued orders compelling the defendant to comply with the 2010 Subpoena, and holding her in contempt for failing to comply. The defendant appealed Judge Pauley's compulsion and sanctions orders to the Second Circuit, but withdrew that appeal after the Second Circuit rejected the defendant's arguments in a similar case. In 2014 Mr. Leibman produced to the Government, on behalf of the defendant, three pages of documents relating to a French HSBC account. Although the subpoena called for the production of all records in the defendant's "care, custody, or control" relating to foreign accounts in which the defendant had a "financial interest," no documents were produced on behalf of the defendant relating to accounts held in the name of Gestino Stiftung.

In June 2016, the Government filed a sanctions motion against the defendant for failing to comply with Judge Pauley's compulsion order after the Government discovered numerous additional documents from other sources relating to Gestino Stiftung that, in the Government's view, demonstrate that the defendant failed to comply with the 2010 Subpoena. Judge Pauley heard oral argument on that motion, which is currently pending.[3]

## Discussion

### I. Overview of *Curcio* Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. This right to counsel includes a "correlative right to representation that is free from conflicts of interest." *Wood* v. *Georgia*, 450 U.S. 261, 271 (1981). The right, however, "is not absolute." *United States* v. *Arrington*, 867 F.2d 122, 128 (2d Cir. 1989). The "essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a

---

[3] Mr. Leibman has alleged that the Government engaged in various forms of misconduct in both the instant case and the sanctions proceedings before Judge Pauley. The Government believes those allegations are wholly without merit.

defendant will inexorably be represented by the lawyer whom he prefers." *Wheat* v. *United States*, 486 U.S. 153, 159 (1988).

When evaluating an attorney's conflict of interest, the district court has an independent obligation to "ensur[e] that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them" and "the government's interest in ensuring a fair trial and a just verdict." *United States* v. *Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *see also United States* v. *Locascio*, 6 F.3d 924, 931 (2d Cir. 1993) (in analyzing conflicts, courts must consider the "interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial"). When a district court is confronted with a possible conflict of interest, it must first determine whether "the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States* v. *Cain*, 671 F.3d 271, 293 (2d Cir. 2012). "An *actual* conflict of interest occurs when the interests of a defendant and his attorney diverge with respect to a material factual or legal issue or to a course of action." *United States* v. *Williams*, 372 F.3d 96, 102 (2d Cir. 2004) (quotation marks omitted). "A potential conflict of interest exists if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States* v. *Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998).

If the district court determines that no rational defendant would "knowingly and intelligently desire the conflicted lawyer's representation, the district court must immediately disqualify him." *See id.* (quotation marks omitted). In such a case, no hearing pursuant to the procedures set out in *United States* v. *Curcio*, 694 F.2d 14, 24–25 (2d Cir. 1982) is required. *Kliti*, 156 F.3d at 153 & n.3. If, on the other hand, the district court determines that an actual or potential conflict exists but that it would not fundamentally impair the lawyer's representation, the district court "should address the defendant directly and determine whether he wishes to make a knowing and intentional waiver of his right to conflict-free counsel in conformity with the procedures set out in [*Curcio*]." *Kliti*, 156 F.3d at 153.

A district court has "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163. Consistent with that deferential approach, the Second Circuit recently observed that, "we have never concluded that the trial court abused its discretion in disqualifying a conflicted attorney." *Cain*, 671 F.3d at 295.

## II. Defense Counsel May Have an Interest in Avoiding a Potential Defense

Defense counsel provided legal advice to the defendant during a portion of the time period the defendant is alleged to have engaged in the charged scheme. Specifically, Count One alleges that the scheme took place from 1989 through 2012, and defense counsel began representing the defendant at least as early as October 2010. Further, there is an ongoing investigation into the defendant's continuation of that scheme from 2013 through the present, as well as other violations of law committed prior to 2013. As discussed above, after receipt of the subpoena, the defendant took measures to limit her legal exposure by seeking to avoid further demonstrably false affirmative misrepresentations while still continuing the illegal scheme to, among others things,

shield the existence and location of the Swiss bank accounts holding the secret inheritance from the IRS through use of the Gestino Stiftung. *See Royer*, 549 F.3d at 896; *Cunningham*, 723 F.2d at 229.

The defendant may be able to assert an advice-of-counsel defense with respect to some of the conduct at issue if defense counsel provided advice to the defendant concerning the ongoing legality of the defendant's actions between 2010 and 2012. Specifically, it is possible that the defendant could argue that even if she violated the law during that time period by continuing to use the Gestino Stiftung to shield the existence and location of the Swiss bank accounts holding the secret inheritance from the IRS, it was based on a good faith and honest reliance on advice of her counsel. *See, e.g., United States* v. *Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997) (discussing advice-of-counsel defense in the context of a criminal tax matter). Such a defense might, if presented by Mr. Leibman, make him an "unsworn witness," as discussed below. It could also create a potential conflict to the extent there was a difference in understanding between Lacy Doyle and Mr. Leibman regarding what information she provided him and what advice Mr. Leibman provided her.

In *United States* v. *Hanna*, 207 F.Supp.2d 45 (E.D.N.Y. 2002), the court found that a conflict relating to a potential advice-of-counsel defense was sufficiently serious that it could not be waived. In *Hanna*, a law firm served as transactional counsel for various initial public offerings, and then served as defense counsel in a subsequent criminal fraud case involving those same transactions. The court held that this shift from transactional counsel to criminal defense counsel resulted in an actual conflict because the law firm had "a strong personal interest" in avoiding a defense involving any criticism of its prior transactional advice. *Id.* at 49. Specifically, the court held that there was an actual conflict between the law firm's "interest in preserving its integrity and reputation" and its representation of the defendant due to the existence of a potentially meritorious defense that would imply the law firm was involved in the underlying fraudulent activity or that the firm's lack of diligence permitted others to engage in fraud. *Id.* The court went on to hold that this conflict was so serious it could not be waived. *Id.* at 50; *see also United States v. Levy*, 25 F.3d 146, 156 (2d Cir. 1994) (holding that an actual conflict existed when lawyer had "a strong personal interest, distinct from [the defendant's] interests, in avoiding any exploration" of a topic which could reflect poorly on the defense counsel).

### III. Defense Counsel Is a Potential Sworn Witness

One of the central issues at trial will be the defendant's ongoing knowledge and control of the Gestino Stiftung after 2006, when the entity was established in Lichtenstein. As noted above, a key piece of evidence on this point will be the Form 3520 filed by the Accountant in 2012 disclosing the defendant's receipt of distributions from the Gestino Stiftung in 2010, and the fact that the Gestino Stiftung was located in Panama at the time (and not in Lichtenstein, where it was established at the defendant's direction in 2006). This form is particularly important because it constitutes a direct admission made on behalf of the defendant concerning her knowledge of and association with the Gestino Stiftung.

The Government anticipates that the Accountant will testify at trial that the information on the Form 3520 was provided by Mr. Leibman.[4] As a consequence, Mr. Leibman is a potential witness because he could be called to testify concerning the defendant's knowledge of the location and status of the Gestino Stiftung after its 2010 move from Lichtenstein to Panama, and the defendant's ability to obtain funds from the Swiss bank accounts held by the entity.

The Second Circuit has repeatedly held that a conflict exists when a defense counsel is a potential witness against a defendant at trial. *See, e.g.*, *Levy*, 25 F.3d at 156 (holding that an actual conflict existed when defense counsel was a potential witness because defense counsel "had a personal interest to avoid even the possibility of being called as a witness, especially since he very likely would have had to cease representing [the defendant] if required to testify"); *United States v. Jones*, 381 F.3d 114, 121 (2d Cir. 2004) ("If Ruane turns out to be an actual or unsworn witness in defendant's trial, this would be actual grounds for disqualification. . . . The risk that he would become a witness at trial was enough alone to allow the district court to reach this determination under an abuse of discretion standard.").

The Second Circuit's decision in *United States v. Cain*, 671 F.3d 271, 295 (2d Cir. 2012) is particularly instructive. In *Cain*, the conflict related to defense counsel's role in collecting and submitting witness affidavits to prosecuting authorities. The prosecutor in that case was investigating whether the witness affidavits were perjured and the product of witness tampering, and sought defense counsel's testimony to establish that the affidavits had been in the defendant's possession and that the defendant had intended that the affidavits be filed in an official proceeding. The Second Circuit held that "[a]lthough [defense counsel] was not a potential target of the grand jury investigation and his testimony may well have been less central to the prosecution than the testimony that would have been offered by the lawyer in *Jones*, we cannot say that the district court abused its discretion in concluding that the risk that [defense counsel] would become a witness against his client was sufficient to justify his disqualification. *Id.* at 295. Here, Mr. Leibman is in a similar position as the defense lawyer in *Cain*: he has relevant and inculpatory information concerning the defendant by virtue of serving as an intermediary for the defendant.

### IV. Defense Counsel May Be an Unsworn Witness

Even if defense counsel were not called as a formal witness and placed under oath, defense counsel may serve as an unsworn witness at trial. "An attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial." *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993). Under such circumstances, "the

---

[4] The communications through which Mr. Leibman himself learned of this information is not privileged because, even if those communications were with the defendant, the information was willingly disclosed to a third party (the Accountant, for purposes of tax filings with the IRS). *See John Doe Co. v. United States*, 79 F. App'x 476, 477 (2d Cir. 2003) (privilege only applies when communication "was intended to be and was in fact kept confidential"); *In re Horowitz*, 482 F.2d 72, 81-82 (2d Cir. 1973) ("We deem it clear that subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege.").

attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client." *Id.* "Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." *Id.*; *see also United States* v. *White*, 545 F. App'x 69, 71 (2d Cir. 2013) ("An attorney who acts as an unsworn witness should be disqualified as counsel, in part to prevent the attorney from "subtly impart[ing] to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination."); *Ciak* v. *United States*, 59 F.3d 296, 304-305 (2d Cir. 1995) ("Standing alone, becoming an unsworn witness is a basis for disqualification of an attorney.").

"When an attorney is an unsworn witness . . . the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired." *Locascio*, 6 F.3d at 924. "Waiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced." *Id.*

Mr. Leibman will likely be speaking to the jury directly in opening and closing statements, and indirectly in his questioning of witnesses, about documents he had a hand in creating (such as the Form 3520 submission and the defendant's 2010 and 2011 tax returns) and events in which he was a first-hand observer and as to which he provided legal counsel (including the defendant's activities following receipt of the 2010 Subpoena). Mr. Leibman may argue—explicitly or implicitly—that the defendant could not or would not have been engaged in an illegal scheme under his watch, and thus make the trial in part a referendum on himself without formally being a witness. Thus, even if a formal advice-of-counsel defense is not asserted, a more nuanced defense argument invoking the involvement of counsel could still give rise to an unsworn witness problem. It is possible that such an argument may be permissible if made by another lawyer, but it would be improper if made by Mr. Leibman himself. And Mr. Leibman will likely find himself questioning a witness, the Accountant, whose answers will reflect relevant information that was initially provided to the Accountant years ago by Mr. Leibman himself.

The Second Circuit has held on numerous occasions that such situations can present a serious conflict. *See Ciak*, 59 F.3d at 304-305 ("Wieselman's arguments to the jury about Reed's prior statements would 'be viewed as a statement of a witness as well as of an advocate'—thereby creating a conflict severe enough to require Wieselman's disqualification."); *United States* v. *Iorizzo*, 786 F.2d 52, 57 (2d Cir. 1986) ("Finding an actual conflict requiring disqualification because "whether or not [defense lawyer] actually testified, his firsthand involvement in Tietz's testimony would cause any argument to the jury about that testimony to be viewed as a statement of a witness as well as of an advocate."); *United States* v. *McKeon*, 738 F.2d 26, 34-35 (2d Cir. 1984) ("If counsel were to cross-examine the witness as to her conversations with him, argue the credibility of her testimony to the jury, or suggest alternative interpretations of her account of the conversation, he would place himself in the position of an unsworn witness and implicitly put his own credibility at issue. . . . The Sixth Amendment interest in counsel of choice must give way when chosen counsel is so compromised.").

In light of the circumstances set forth above, the Government respectfully submits that Mr. Leibman's representation of Ms. Doyle raises serious concerns that merit consideration by the

Court. To the extent the defendant is willing to forego any argument or questioning by her counsel concerning the areas in which Mr. Leibman may be an unsworn witness, and to the extent that is possible under these facts, the matter should at a minimum be addressed at a *Curcio* hearing.

### **Conclusion**

   For the reasons set forth above, the Government respectfully requests that the Court hold a *Curcio* hearing with the defendant to address the potential conflicts raised by this letter.

                      Respectfully submitted,

                       PREET BHARARA
                       United States Attorney

           By:  _____
              Jared Lenow/Katherine Reilly
              Assistant United States Attorneys
              (212) 637-1068/6521

Cc (by Email and ECF):

Alain Leibman, Esq.
Matthew S. Adams, Esq.