

**Fox Rothschild** LLP
ATTORNEYS AT LAW

Mail: P.O. Box 5231, Princeton, NJ 08543-5231

Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Tel 609.896.3600  Fax 609.896.1469
www.foxrothschild.com

Alain Leibman
Direct Dial:  (609) 895-6743
Email Address:  aleibman@foxrothschild.com

January 9, 2017

**_VIA ECF_**
Hon. Andrew L. Carter, Jr., U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

   Re: United States v. Lacy Doyle
     <u>16-506 (ALC)</u>

Dear Judge Carter:

  As counsel for defendant Lacy Doyle, we were recently served with a letter-motion filed by the Government, seeking a hearing pursuant to _United States v. Curcio,_ 680 F.2d 881 (2d Cir. 1982) concerning certain alleged conflicts of interest.  Kindly accept this informal letter brief as defendant's response.

  Preliminarily, it must be said that the Government's motion ("Gov't Mot., at ___") is marked both by an inaccurate recitation of the operative facts and a misapplication of relevant case law defining the sorts of attorney conflicts which necessitate a _Curcio_ hearing.  It is also unclear from a reading of the Motion whether the Government is seeking a _Curcio_ hearing to secure a knowing and intelligent waiver by the defendant of potential conflicts of interest on the part of counsel or is instead seeking to disqualify defense counsel altogether, as the Motion asks for one or both forms of relief in various places.

  Perhaps this lack of clarity is aggravated by the Motion's prematurity -- we are months from trial; the Government's discovery production, to be addressed at a hearing scheduled for January 11th, is deficient, as we have detailed, and incomplete; and dispositive motions which may moot any number of the Government's issues have not yet been filed.  Nonetheless, we offer this response to clarify the operative facts and the guiding directives of the Second Circuit.

A Pennsylvania Limited Liability Partnership

California Colorado Connecticut Delaware District of Columbia Florida
Illinois Nevada New Jersey New York Pennsylvania Texas



Fox Rothschild LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 2

A.  Attorney background

Since the Second Circuit has indicated that conflict issues may be resolved in many instances through the representations of counsel, the undersigned wanted to more formally present his credentials to the Court.  The undersigned, a graduate of Columbia College (1979) and the N.Y.U. School of Law (1982), served as an Assistant U.S. Attorney for the District of New Jersey from 1988 to 2004, holding positions both as deputy chief of the largest white-collar unit in the office and as Senior Litigation Counsel.  The undersigned is a long-standing member of the Bar of this Court, and has never been the subject of a disciplinary proceeding in any court. The undersigned takes quite seriously his ethical obligations, including the obligation to avoid conflicts of interest of any kind.

The undersigned began his representation of Lacy Doyle in late 2010, when Ms. Doyle was served with a grand jury subpoena by the Government in this District.  Since that engagement began, Ms. Doyle has filed a number of federal income tax returns and related forms, not a single one of which is charged in the Indictment to have been inaccurate or false, nor argued in the Motion to have been inaccurate or false.

Ms. Doyle, as the Government knows, also has tax counsel, one Charles Falk, Esq., a New Jersey attorney.  Mr. Falk is not a member of the undersigned's firm, Fox Rothschild LLP. He will not appear as counsel in this case.

B.  *Curcio* and its progeny

The Motion's discussion of the protocol of *Curcio* and its progeny (Gov't Mot., at 3-4) fails to treat fully the requisite phased analysis of attorney conflict allegations, leaving the incorrect impression that the merest allegation by the Government of a conflict requires the Court to either query a defendant as to her waiver of the conflict or disqualify counsel.

To start with, the *Curcio* case dealt with the classic multiple-representation conflict of interest which features in most cases requiring waiver hearings or disqualification.  There, the Government moved to disqualify attorney Zeldes from representing at trial both Curcio brothers in an extortionate lending prosecution. The Government argued that there were two conflicts: that Zeldes should not represent both because the brothers had different roles in the offense conduct and so different defenses, and because Zeldes represented both in a separate criminal case.  680 F.2d at 883.



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 3

In vacating the District Court's order disqualifying Zeldes, the Court of Appeals observed that "a criminal defendant has not only a constitutional right to an attorney who has no conflict of interest but also a right - of constitutional dimension, although not absolute - to counsel of his own choosing." *Id.*, at 884 (citations omitted).   Since the Government's expressed concern about the ability of counsel to advocate for the different defenses available to each defendant was "relatively weak" or worse, there was no reason the defendants could not intelligently and knowingly elect to proceed with Zeldes' joint representation of them. *Id.*, at 885.

Subsequently, the Second Circuit has held that a full *Curcio* hearing is not automatically required upon the Government's claim of a conflict of interest, but that initially only an obligation of inquiry rests upon the District Court.  "When the trial court knows or reasonably should know of the possibility of a conflict of interest, it has a threshold obligation to determine whether the attorney has an actual conflict, a potential conflict, ***or no conflict***." *United States v. Kliti*, 156 F.3d 150, 153 (2d Cir. 1998) (citation omitted) (emphasis added).  In meeting this first-stage obligation, "the trial court may rely on counsel's representations." *Ibid.* (*citing United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994)).

"If the court is satisfied at the inquiry stage that there is no actual conflict or potential for one to develop, ***its duty ceases***." *United States v. Cain*, 671 F.3d 271, 293 (2d Cir. 2012) (*citing Levy*, 25 F.3d at 154) (emphasis added), *cert. den.*, 134 S. Ct. 56 (2013); *Kliti*, 156 F.3d at 153 (no need either to disqualify the attorney or to hold a *Curcio* hearing if the first-stage inquiry leads the Court to conclude that no conflict at all has been identified).

If the trial court determines that there does exist an actual or potential conflict of interest, then the Court has a second-stage, "disqualification/waiver" obligation: "[i]f the conflict is so severe that no rational defendant would waive it, the court must disqualify the attorney ... If it is a lesser conflict, the court must conduct a *Curcio* hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation." *Kliti*, 156 F.3d at 153 (citation omitted).

An ***actual*** conflict of interest exists when "during the course of the representation, the defendants' interests ... diverge with respect to a material fact or legal issue or to a course of action," *United States v. Fulton*, 5 F.3d 605, 609 (2d Cir. 1993) (*quoting Cuyler v. Sullivan*, 446 U.S. 335, 356 n. 3 (1980) (Marshall, J., concurring in part, dissenting in part)), or when the attorney's current representation is impaired by the loyalty owed to a former client. *United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995).  In contrast, a mere ***potential*** conflict of interest exists "if the interests of the defendant may place the attorney under inconsistent duties



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 4

at some time in the future." *Kliti,* 156 F.3d at 153 n.3 (*citing Cuyler,* 446 U.S. at 356 n. 3).  A
"potential" conflict of interest is a "lesser" category of conflict.  *United States v. Lech,* 895 F.
Supp. 586, 590 (S.D.N.Y. 1995) (citation omitted) (Sotomayor, J.).

        The Court of Appeals noted in *Cain* that it has "emphasized that the class of cases in
which an attorney conflict is truly unwaiveable is a 'very narrow' one." 671 F.3d at 291 (*quoting
United States v. Perez,* 325 F.3d 115, 126 (2d Cir. 2003)).  Only if the Court's inquiry establishes
that the conflict is "such that no rational defendant would knowingly and intelligently desire the
conflicted lawyer's representation" should the Court disqualify the attorney.  *Levy,* 25 F.3d at
153.  District Courts enjoy "broad latitude in making a decision whether to disqualify a
defendant's chosen counsel."  *Ibid.* (*quoting Fulton,* 5 F.3d at 614).

        The defense submits that neither a potential nor actual conflict has been identified by the
Government, and, thus, there is no need to proceed to a *Curcio* hearing at which this defendant
would be asked to waive a conflict.

        C.        The Government has continued to use the grand jury process to improperly
                  <u>advance its trial preparation efforts</u>

        It is curious that the Government refers in this criminal case Motion to a parallel, and
continuing, effort on its part to gather foreign bank records for use in the trial in this matter under
the guise of an on-going grand jury investigation.  (Gov't Mot., at 3).  In seeking to have Lacy
Doyle held in contempt for not possessing bank records of a foreign trust of which she is merely
a discretionary beneficiary -- not the grantor, or creator, of the trust and not a trustee of the trust -
- the Government is abusing the grand jury process.

        Indeed, at the hearing on the contempt motion, held before Judge Pauley on November 3,
2016, the Court itself repeatedly questioned the Government's diligence, or lack thereof, in
pursuing the relief of contempt (*see In re Various Grand Jury Subpoenas,* 12 Misc. 381 (WHP),
transcript of hearing, at 3-4, 10) (*see* Attachment A hereto); questioned the timing of the
contempt application, since the prosecutor (the same as in this criminal case) admitted knowing
to a "strong likelihood" at the time the grand jury application was filed that Ms. Doyle was going
to be indicted (*id.,* at 7); elicited an acknowledgment from the prosecutor that the Indictment in
this case "parallels, it mirrors" the contempt application (*id.,* at 7); and questioned whether the
contempt application was merely punitive (*id.,* at 8, 26), and so not an appropriate resort to the
Court's curative contempt power.  Under questioning from the Court, the prosecutor conceded
that it was "really the Justino (sic) entity and that sort of thing which was really the focus of the



Fox Rothschild LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 5

government's efforts here," (*id.*, at 13), which demonstrates that the grand jury is being improperly used for trial-evidence collection.  It is fundamentally true that "it is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial."  *United States v. Punn,* 737 F.3d 1, 7 (2d Cir. 2013) (citation omitted).

However, whatever the reason it was thought important to refer to the overlapping grand jury matter, the reference does felicitously yield a source of factual information which helps to establish that there is no conflict of interest interest here: the grand jury testimony of the accountant who prepared Lacy Doyle's 2010 Form 1040, which transcript the Government submitted as an exhibit to the grand jury judge, as noted below.

> D.     There is no factual predicate from which to conclude that any conflict, potential or actual, exists

The Government's Motion rests on two factual predicates, both offered to show that defense counsel has had involvement in certain matters, and from which the Motion hypothesizes conflicts of interest for counsel.  However, one of the factual bases tendered by the Government cannot form the basis of a conflict of interest because it is entirely an episode of an attorney properly performing his/her function in a lawful manner.  The second factual basis is simply inaccurately stated in the Motion, as shown by the above grand jury testimony, and evinces no involvement of defense counsel at all.

First, in a section of the Motion entitled in part "Information Derived from Mr. Leibman" (Gov't Mot., at 2-3), the Government describes that Ms. Doyle, after she engaged present counsel and her present accountant, filed a Form 1040 for the year 2010, which included a Form 3520-"Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts," which identified a number of cash distributions which she received as a  beneficiary of the Gestino Foundation trust and on which she then paid all taxes due. (*See* Attachment B, the accountant's retained copy of the as-filed Form 3520, produced by the Government in discovery here).  The accountant identified the date and amount of those distributions as a result of the undersigned neutrally providing those figures in a letter to the accountant dated October 4, 2011. (*See* Attachment C, the letter having been also produced by the Government in discovery, with redactions already present).  The Government, which later obtained Gestino Foundation records, does not dispute either the accuracy of the reported distributions or that the proper income tax was paid by Ms. Doyle.



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 6

Good practice by any attorney, not just a criminal defense attorney, would include guiding a client on applicable legal requirements and fostering compliance with those requirements.  Indeed, such conduct is arguably an ethical requirement for any attorney. *Cf.* Model Rules of Professional Conduct, Rule 1.2(d) (lawyer may not counsel client "to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent").  Ms. Doyle, with the assistance of her accountant and her attorney, complied with the IRS Code.  Nowhere in the Indictment is it alleged that her filing of the Form 1040 and related Form 3520 for 2010 was inaccurate, much less false, or that the filings violated law.  However, according to the Government, the provision by an attorney to a tax preparer of accurate factual information about several distributions received by their common client is somehow a basis for concluding that the attorney has a conflict of interest.

In order to reach the puzzling conclusion that an attorney ensnares himself in complicit conduct when he facilitates the filing of accurate tax returns by his client, the Government is obliged to contort the English language to convert genuine law-abiding behavior into something which sounds like law-evading behavior.  The Motion thus characterizes Ms. Doyle's law-compliant 2010 and post-2010 conduct -- filing accurate tax returns and filing Foreign Bank Account Activity Reports whether or not required of her as a discretionary beneficiary of Gestino Foundation -- as "defensive measures … seeking to avoid further demonstrably false affirmative misrepresentations ….," to make it appear to be part of a continuing scheme to obstruct the IRS. (Gov't Mot., at 2 n.2).

That is a remarkably peculiar way to frame acts which comply with the law.  It is akin to saying of a defendant who appropriately appears in court as and when required and thus complies with the dictates of a bail order that she, rather than complying with her bail conditions, acted defensively merely to avoid becoming a fugitive.  Every affirmative act of law-obedience, such as crossing a street at the light, can negatively be characterized as violation-avoidance, such as avoiding an illegal jaywalk.  But tortured word-play does not create a conflict where none exists.  The Indictment thus makes more sense than the Motion, since the grand jury did not nefariously characterize Ms. Doyle's compliance with law as conspiratorial conduct.[1]

---

[1] In a further gratuitous jibe at the defendant, the Government also points out in the Motion that the 2010/post tax returns and FBARs contain a Fifth Amendment assertion as to particular and contested points of affiliation with any Gestino Foundation bank account.  (Gov't Mot., at 2).  It is and will be our position at any trial that, pursuant to Department of Treasury regulations and other law, Ms. Doyle did not have the requisite relationship with any Gestino Foundation account to be required to file FBARs for such account, and, pointedly, the Indictment does not contain a single charge for failing to file FBARs.  As for any line-item assertions of the Fifth Amendment, it is long-established that a taxpayer may properly assert a Fifth Amendment privilege as to particular entries on a tax return



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 7

The second factual scenario is simply inaccurately reported in the Motion. The Motion maintains, relying on grand jury testimony elicited by the same prosecutor from Jeffrey Callahan, CPA, that he initially prepared as part of the 2010 income tax return of Ms. Doyle a Form 3520 on which he accurately listed four distributions received by Ms. Doyle in 2010 from the Gestino Foundation. (Gov't Mot., at 3). As noted above, defense counsel did neutrally provide the detail of those distributions to Mr. Callahan in order to facilitate the preparation of an indisputably accurate Form 3520. (*See* Attachment C). However, Mr. Callahan completed the Form 3520, and it was dutifully filed by the obedient taxpayer-defendant, without an address for the Gestino Foundation. (*See* Attachment B). Then, the IRS in 2012 requested that the taxpayer provide Gestino Foundation address information left off the Form 3520 by Mr. Callahan, and Mr. Callahan did so by letter of August 1, 2012. (*See* Attachment D, Mr. Callahan's letter of

---

without rendering the return incomplete or non-compliant with the tax code. *United States v. Josephberg,* 562 F.3d 478, 492-93 (2d Cir.) (*citing United States v. Sullivan,* 274 U.S. 259, 264 (1927)), *cert. den.,* 558 U.S. 965 (2009).

The Government's purpose in pointing out the selective Fifth Amendment assertion is difficult to fathom; the Government cannot without running afoul of the Fifth Amendment attempt at trial to use Ms. Doyle's limited Fifth Amendment assertions on tax filings at trial in any way against her.

Moreover, although accompanied by legal citations, this re-characterization of lawful filings as complicit "defensive measures" is unsupported by those authorities. (Gov't Mot., at 2 n.2, *citing United States v. Cunningham,* 723 F.2d 217 (2d Cir. 1983), *cert. den.,* 466 U.S. 951 (1984), and *United States v. Royer,* 549 F.3d 886 (2d Cir. 2008), *cert, den.,* 558 U.S. 935 (2009)). In *Cunningham,* the defendants were charged with tax evasion, filing false returns and obstructing the IRS by virtue of a scheme to hide bribe payments made to a political party official. The Government cites *Cunningham* to argue that actions taken after the filing of false returns could constitute a part of the scheme to deceive the IRS (and so counsel's involvement in those action raises a conflict of interest), and the Second Circuit did of course so hold in that case. Rejecting the argument of a defendant that the introduction of post-tax filing evidence was beyond the scope of the single charged conspiracy, the Court of Appeals held rather that there was one continuous conspiracy, which included subsequent acts taken to defraud the IRS into believing that all taxes had been paid. 723 F.2d at 229. But the acts in *Cunningham* which were part of a continuing scheme to obstruct <u>were</u> <u>not</u> the filing of *accurate* tax returns (as here) or the filing of *accurate* Form 3520s (as here). Instead, the concealment and obstructive acts were *false testimony* before the grand jury (*id.,* at 221); the *erasure* of penciled notations on documents (*ibid.*); inducing a third party to make *false statements in IRS interviews* (*id.,* at 222); and the *deceit* of federal authorities post-filing. (*Id.,* at 229). No case is cited by the Government for its peculiar notion that honest acts somehow further a scheme to deceive.

The *Royer* case involved a venue challenge by defendants convicted of RICO and securities fraud violations. Holding that a defendant had impeded a grand jury investigation in the E.D.N.Y by "falsely [telling] FBI investigators" about certain actions, he had created venue in that District. 549 F.3d at 896. *Royster* is of no assistance to the Government, since, as in *Cunningham,* a finding of continuing criminal activity was dependent on the commission of continuing crimes, not subsequent, honest efforts at law-compliance.



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 8

August 1, 2012, enclosing a revised first page of the Form 3520, produced in discovery by the Government).

The allegedly problematic involvement of defense counsel?  The Government says that Mr. Callahan "has stated that he learned of the location of the Gestino Stiftung foundation from Mr. Leibman." (Gov't Mot., at 3).

Although the statement is incorrect, we should pause to consider the import of the Government's position.  It is arguing that if counsel learned through whatever means of a fact germane to the trial, then he has put himself in a conflict position should he make use of that information, as through examination or selection of witnesses, identification of defenses, or the provision of that information to experts.  This assertion would be startling news to all defense counsel in this District, who normally endeavor to independently acquire salient facts prior to trying a case.  Every lawyer who employs an investigator or forensic accountant to learn of dates/amounts of deposited funds or disbursements would thus be conflicted out of trying the ensuing case.  It is a preposterous notion and as noted below, as long as those facts were acquired by defense counsel without dual representation or ethically improper behavior, courts generally have not taken the view that the acquisition of such facts presents a conflict.

Returning to the Government's statement, the reality is that Mr. Callahan did not make the reported statement in the grand jury, at least as far as can be determined from the Government's selective release of his testimony transcript.  In one of its submissions on the grand jury matter, the Government filed as an exhibit a partial transcript of Mr. Callahan's testimony before the grand jury.  In that testimony, Mr. Callahan described how he and a tax lawyer named Charles Falk, Esq., have developed a practice of assisting U.S. taxpayers in making voluntary disclosures to the IRS of previously unreported foreign bank accounts, a practice formally encouraged and facilitated by the IRS, and involving the filing of amended tax returns, the payment of non-disclosure penalties, the payment of back taxes, and any interest due and owing.  (Ex. 1 to Doc. #56, the Government's November 7, 2016 letter to Judge Pauley).

Of Lacy Doyle, Mr. Callahan testified that to his knowledge Ms. Doyle's attorneys were both Charles Falk, Esq., and Alain Leibman, Esq. (*Id.*, 45:25-46:3).  Later in his testimony, when asked about his August 2012 corrective change to add to the Form 3520 an address for Gestino Foundation, Mr. Callahan <u>did not</u> say, as the Government advises this Court, that he learned of that address from the undersigned, but rather that he learned of it "***through legal counsel.***" (*Id.*, 49:18-25).



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 9

The undersigned was not the only "legal counsel" (a plural, as well as singular, designation in ordinary parlance) for Ms. Doyle, as Mr. Callahan testified. The source of any address information provided to Mr. Callahan was not the undersigned. It would still be of no moment, and would create no conflict of interest, if in fact it was the undersigned who had learned that information through investigation and defense of the then-grand jury matter and shared that accurate information with a tax preparer, but the undersigned represents that he was not the source of that information.

So, the effort to cast aspersions on defense counsel rests entirely on (1) counsel's role, whatever it may have been, in guiding law-compliant actions; and (2) an erroneous characterization or misunderstanding of grand jury testimony. No conflict of interest results.

E.   <u>No colorable conflict has been posited by the Government</u>

Proceeding from the flawed factual premises above, the Motion then posits three kinds of conflict which, it seems to say, either are present at this time or have the potential to arise. None of these scenarios constitute conflicts under the authorities cited in the Motion.

1.   <u>There is no prospect of an avoided defense</u>

The Motion, as noted above, maligns Ms. Doyle's law-compliant filings, which occurred in 2010 and thereafter, as part of a scheme to obstruct the IRS. To bolster that upside-down conclusion, the Motion adds a series of speculations, not established facts: (a) that Ms. Doyle, during the same period as her law-compliance, also had responsibility for "continuing to use the Gestino Stiftung [Foundation trust] to shield the existence and location of the Swiss bank accounts holding the secret inheritance form the IRS"; (b) "it is possible that the defendant could argue" that acting to conceal such accounts "was based on a good faith and honest reliance on advice of her counsel"; (c) that the undersigned was that hypothetical counsel; and (d) that, if all those hypothesized and unproven facts align, (i) the undersigned would then be an "unsworn witness" and (ii) "[i]t could also create a potential conflict to the extent there was a difference in understanding between Lacy Doyle and Mr. Leibman regarding what information she provided him and what advice Mr. Leibman provided her." (Gov't Mot., at 4-5).

Counsel must profess that we do not understand the flow of the Government's argument. It rests on assumptions which are contested and will be the stuff of trial; it does not explain exactly how, even if shown to be true, any of this makes the undersigned an "unsworn witness"; or how anything set forth in the Motion demonstrates a difference of views between lawyer and



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 10

client. (The latter a transparent effort by the Government to convert the Doyle matter into one involving the kind of divergence of views between client and lawyer which can amount to an "actual" conflict.)

The authorities cited by the Government do not relate to the kind of sequenced speculations contained in the Motion and so do not support the need for a *Curcio* hearing. The case of *United States v Evangelista,* 122 F.3d 112 (2d Cir. 1997), a criminal tax matter, was not, as the Motion characterizes it, an advice-of-counsel case (Gov't Mot., at 5); instead, it was an advice-of-accountant defense which was raised by the defendant. *Id.,* at 117-18. Even when correctly characterized, it has nothing to do with the Government's point and only acknowledges the availability of such a defense in a given case on appropriate facts.

The other authority cited in this portion of the Motion, *United States v. Hanna,* 207 F. Supp.2d 45 (E.D.N.Y. 2002), is of no pertinence. There, defense firm Gersten Savage acted as counsel to two underwriting firms accused of scheming with defendant Saulon to fraudulently manipulate various IPOs, and also represented now-Government witnesses in related regulatory proceedings. So, defense counsel both had an active role in the fraudulent transactions which underlay the charges, putting their interests at odds with their client's, and the classic dual-representation problem of having represented persons who were now key witnesses against their current client. What is surprising is that the firm resisted disqualification; what is unsurprising is that it was disqualified on both grounds. *Id.,* at 49-50. In contrast, Ms. Doyle's counsel neither is alleged to have had any involvement in the underlying events charged in the Indictment, nor did counsel represent Government witnesses in other proceedings.

2.     There is no prospect of the undersigned becoming a sworn witness

Drawing on its mischaracterization of CPA Callahan's grand jury testimony, the Government posits that because the undersigned provided Mr. Callahan with the address of the Gestino Foundation in 2012 for the emendation to the previously-filed Form 3520 (not true), counsel could then be sworn as a witness. (Gov't Mot., at 6). The Court need have no concerns, since counsel was – as represented above – not the source of that information.

The Motion also argues that the undersigned could be a sworn witness "concerning the defendant's knowledge of the location and status of the Gestino Stiftung after its 2010 move from Lichtenstein to Panama, and the defendant's ability to obtain funds from the Swiss bank accounts held by the entity." (Gov't Mot., at 6). This assertion is also puzzling. If the Government means to say that any attorney who obtains factual knowledge from or about his



Fox Rothschild LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 11

client can be threatened by the prosecution with being called as a witness, then the Department of Justice may be expected to have a sternly negative view of this prosecutor's belief that he holds such destructive power over the attorney-client relationship and the attorney-client privilege.

Again, the authority cited by the Government, in this instance *Cain, supra,* is of no assistance to it. In *Cain,* attorney Musitano had represented Cain in a state criminal case in which an issue had arisen of Musitano assisting Cain in procuring perjured affidavits used in an effort to influence state prosecutors; that episode formed a portion of the evidence underlying the federal charges and Musitano himself was subpoenaed to testify before a federal grand jury under the crime-fraud exception to the attorney-client privilege. 671 F.3d at 291-93. Rejecting a claim that even so strong a conflict was waiveable by Cain, the court of appeals observed that there was a "narrow class of so-called per se conflicts that are not susceptible to waiver." *Id.,* at 293. The court repeated that such actual conflicts requiring disqualification appears only in a "very narrow" class of cases. *Id.,* at 294.

Unlike attorney Musitano, the undersigned did not engage in a fraud, denuding his client communications of their privilege; has not been subpoenaed to testify in a grand jury; and was not personally involved in any action alleged in the Indictment here as illegal. Although the Motion argues that "Mr. Leibman is in a similar position as the defense lawyer in *Cain*" (Gov't Mot., at 6), this is patently not so.

3.    Counsel is not an "unsworn" witness

Last in the series of supposed conflict scenarios is the contention that the undersigned has first-hand knowledge of events to be presented at trial, because of "documents he had a hand in creating (such as the Form 3520 submission and the defendant's 2010 and 2011 tax returns) and events in which he was a first-hand observer and as to which he provided legal counsel (*including the activities following receipt of the 2010 Subpoena*)." (Gov't Mot., at 7) (emphasis added). The argument continues that counsel may then use at trial his knowledge to both question the CPA who actually prepared the tax documents in question and/or to argue to the jury that "defendant could not or would not have been engaged in an illegal scheme under his watch …." (*Ibid.*).

The knowledge of which the Government speaks comes with any competent attorney's having represented the same client through a six-year grand jury investigation, as was the case here – generally, such counsel has participation in and knowledge of document productions and



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 12

disagreements with the Government; counsel would ordinarily be aware, unless he was incompetent, of tax filings made by his client, for which he may even have neutrally transmitted accurate data for inclusion on filings which were indisputably accurate in such respects; counsel, unless he was incompetent, will have investigated relevant facts, spoken to potential Government witnesses he will later cross-examine, and so on.   None of this can seriously be considered inappropriate for a trial attorney; to the contrary, any attorney who did not gain such knowledge for use in exactly the ways outlined by the Government would be rendering decidedly ineffective assistance to his client.

Again, the authorities cited by the Government do not serve to connect the Doyle matter to any circumstance where an attorney was held to be in a conflicted position.  The case of *Ciak v. United States,* 59 F.3d 296 (2d Cir. 1995), is shown to be alien to these proceedings simply from the Court's summary of its conflict issue: "In this case, an important government witness was a recent client of petitioner's trial counsel in a substantially related matter, and defense counsel presented a theory that possible was at odds with the position he took in the related proceeding." *Id.,* at 298.  The matter of *United States v. Iorizzo,* 786 F.2d 52 (2d Cir. 1986), presented, similar to *Ciak,* a classic dual-representation conflict, not present here -- Iorizzo's attorney had in an earlier proceeding represented a subordinate of Iorizzo who was now a key prosecution witness against Iorizzo, and had gained confidential knowledge the attorney was thus not permitted to use in cross-examining that witness.  This presented an unwaiveable actual conflict of interest.  *Id.,* at 57-58.  Finally, in *United States v. McKeon,* 738 F.2d 26 (2d Cir. 1984), attorney Kennedy represented McKeon in successive trials on the same charges; when the attorney gave detailed factual openings which differed significantly between two trials, the Government successfully sought to admit the earlier opening as a party admission in the last trial. At that point, attorney Kennedy would have been obliged to testify as a defense witness to rebut the implication that the varied openings demonstrated that his client had changed stories between the two trials, so was disqualified as trial counsel. *Id.,* at 34-35. No such scenario presents here.

\*   \*   \*   \*   \*



Fox Rothschild LLP
ATTORNEYS AT LAW

Hon. Andrew L. Carter, Jr., U.S.D.J.
January 9, 2017
Page 13

     In sum, the Court's initial inquiry of the Motion and this response, we respectfully submit, will lead to the conclusion that no colorable conflict of interest, actual or potential, has been shown and that no *Curcio* hearing need be held.

Respectfully yours,

Alain Leibman

AL/bc
Encs.
cc.    AUSA Jared Lenow (via ECF)
      AUSA Katherine Reilly (via ECF)
      Matthew S. Adams, Esq.

# ATTACHMENT   A

1

Gb3WabcC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  In re VARIOUS GRAND JURY SUBPOENAS        12 Misc. 381 (WHP)

4  ------------------------------x

5

6                                            Oral Argument

7

8                                            New York, N.Y.
                                             November 3, 2016
9                                            3:15 p.m.

10

11 Before:

12                    HON. WILLIAM H. PAULEY III,

13                                            District Judge

14                         APPEARANCES

15 PREET BHARARA
        United States Attorney for the
16      Southern District of New York
   JARED P. LENOW
17      Assistant United States Attorney

18

19 FOX ROTHSCHILD LLP
        Attorneys for Respondent
20 ALAIN LEIBMAN
   MATTHEW S. ADAMS

21

22

23

24

25

Gb3WabcC

1  numerous facts that had to be turned over under the Court's

2  order, and we think it's rather brazen, so we would ask the

3  Court to order the defense to comply with, the respondents to

4  comply with the order in full and to impose additional

5  sanctions for what we really see as a shocking and flagrant

6  pattern of conduct and lack of compliance that is clearly

7  demonstrated by the record before the Court.  Frankly, it

8  really is a continuation before this Court of the underlying

9  scheme of withholding information and documents concerning

10  overseas accounts from the U.S. government.

11            THE COURT:  I have a couple of questions for you.

12  First, has the respondent paid any contempt sanction of $1,000

13  a day that I imposed back in 2014?

14            MR. LENOW:  I don't believe so, your Honor.  Defense

15  counsel can correct me on that, but I don't believe so.

16            THE COURT:  Have the Justino Foundation accounts been

17  frozen?

18            MR. LENOW:  Your Honor, we have not frozen any of

19  these accounts.  Frankly, as of today, the record shows they've

20  been moved around quite a bit, so as of today in 2016, we

21  simply don't know where the accounts are, and that's really

22  part of the scheme.  So we have not, your Honor.

23            THE COURT:  Why did the government wait so long to

24  bring this matter back to this Court?

25            MR. LENOW:  Your Honor, it was only relatively

Gb3WabcC

1    recently, at the end of 2015, that the Department of Justice

2    received documents that it requested years before from the

3    foreign country, from Lichtenstein, and my office when I

4    received them in 2016, a lot of them are in a foreign language.

5    We had to review them, but within months of getting these new

6    documents, which were submitted to the Court with the motion,

7    we did take this action.  We simply didn't have those documents

8    which really showed, I think, very clearly that the respondent

9    had these bank accounts and had hid them and had not produced

10   any of the documents in response to the subpoena and court

11   order.  We just simply didn't have the information.  The

12   Department of Justice first got it in December 2015 and my

13   office got it sometime earlier in 2016.  So as soon as we were

14   able to get those documents and go through them, the

15   foreign-language documents, we moved as quickly as we could to

16   bring the matter before your Honor.

17           THE COURT:  But it's 11 months, right?

18           MR. LENOW:  Your Honor, what I would say is our

19   primary focus, we do think that we did move as quickly as we

20   could once we got these documents, but our focus isn't really

21   prospective.  We do think that sanctions that go back in time

22   are warranted, but at the end of the day, we are really at base

23   looking for the subpoena and the order to be complied with.  To

24   the extent the Court thinks that there was any undue delay, we

25   did make our best efforts to move quickly, but we really are

Gb3WabcC

1          THE COURT:  If the $1,000-a-day order were put in

2     place prospectively, since the government never made an

3     application to enforce it over the last three and a half years,

4     is there need for any additional sanction?

5          MR. LENOW:  Your Honor, I think that that would be a

6     reasonable approach here.  At the end of the day, we really

7     simply are asking that there be sanctions imposed going forward

8     at least that would provide significant incentive for

9     compliance.  I think that would be a reasonable approach.

10         THE COURT:  At the time that you filed this

11    application before me, you were about to indict the respondent,

12    right?

13         MR. LENOW:  Yes.  We indicted soon after this

14    application was filed.

15         THE COURT:  You're the assistant on that criminal

16    case, right?

17         MR. LENOW:  That's correct, your Honor.

18         THE COURT:  You knew that you were going to be

19    indicting her, right?

20         MR. LENOW:  We believed that that was -- your Honor, I

21    have to look at my notes.  I think we believed there was a very

22    strong likelihood that we would be indicting her at that time.

23         THE COURT:  And the indictment parallels, it mirrors,

24    the application that was made before me on this motion.  Right?

25         MR. LENOW:  That's right, your Honor.

Gb3WabcC

1      THE COURT:  What assurance can you give me that the

2   additional sanction you're seeking is not punitive?

3      MR. LENOW:  Your Honor, we, as we note in our motion

4   papers, continue to investigate this case vigorously.  We have

5   charged at this point only two counts.  There are numerous

6   other charges that could be brought, a conspiracy charge under

7   18 U.S.C. 371, and even the offense that has been charged, 18

8   U.S.C. 712, on the other count, is only for a finite period of

9   time, which is end of 2012.  There is, we believe, a lot more

10  conduct out there by this defendant or by this respondent and

11  by others who worked with her.  And so we are simply doing what

12  we can to, under very difficult circumstances because the

13  nature of this scheme, the purpose of this is to hide from the

14  government and investigators the very documents that we're

15  seeking.  There are substantial additional violations we

16  continue to look into, different years, different people, and

17  different charges.  And under the case law from this court and

18  from the Second Circuit, that is wholly appropriate, and

19  frankly, we would be in dereliction of our duty if we simply

20  called it quits and didn't continue to investigate what is

21  ongoing, substantial criminal conduct, in our view, including

22  finding these funds and where they are today; we simply don't

23  know because of the very sophisticated nature of the scheme,

24  and the very use of foreign shelters makes it very hard to find

25  these funds.  So it's really a separate and parallel issue.

Gb3WabcC

1    we don't have a trial date.

2           Your Honor, in terms of why it's not punitive, the

3    best indication is we have been doggedly pursuing this

4    investigation for years.  The subpoena was sent long before the

5    indictment.  The subpoena was sent before there was any trial

6    date.  The subpoena was sent before any of that transpired, and

7    we have simply been doing our best to follow up on the

8    investigation.  It's because of the sophistication and nature

9    of the scheme that we really have been stymied until this

10   point.

11          THE COURT:  Right, but like I said earlier, the

12   initial proceeding before me was filed and bears an initial

13   index number of 2012.  It came before me and I decided it in

14   2013, and the first that I ever heard about this again was in

15   May or June when you filed this application.  Pardon me if it

16   just feels like it's falling on deaf ears how zealously the

17   government has been working on the matter.

18          MR. LENOW:  Your Honor, I understand your concern.

19   What I'd say is just that there is some delay.  I believe it

20   was several years before Lichtenstein turned over documents to

21   us.  These schemes are so effective in large part because

22   international members of law enforcement, there are such

23   delays.  Some countries are basically functionally told there's

24   no point in even making overseas requests, so I realize there

25   has been a delay, and I really wish there wasn't, but the whole

Gb3WabcC

1    account number, neither of them had the account value,

2    information and documents which the respondent clearly had

3    access to.

4           THE COURT:  Right.  That was in 2014, right, that you

5    received those two documents?

6           MR. LENOW:  Right.  That's right, your Honor.

7           THE COURT:  Why at that time didn't you come back to

8    the Court?

9           MR. LENOW:  Your Honor, I think what I would say is

10   after receiving the documents from Lichtenstein in 2015, that's

11   when we saw all the kind of data points together, and it was

12   only with those documents that it was clear across the board

13   that there had been a flagrant failure to comply.  There were

14   some data points that the government didn't know back then, but

15   I don't think it was clear how willful the failure to comply

16   was.

17         And in terms of the accounts and the values and so

18   forth, it's really the Justino entity and that sort of thing

19   which was really the focus of the government's efforts here.

20   We do note that the HSBC account itself, frankly there was

21   failure to comply there, but it's only when saw all these data

22   points together and received these documents in December of

23   2015, the DOJ, main justice, and then early 2016 at my office,

24   I believe those were around March of 2016 when I think I first

25   saw them, around or thereabouts, but that's when we realized

Gb3WabcC

1    everything we're entitled to in response to the subpoena and

2    the fact that he had parallel means of getting some of these

3    documents is irrelevant to the respondent's compliance.  It's a

4    total red herring, and Mr. Leibman's outrage here, maybe I'm

5    missing something, but I don't understand it.

6            What I find to be outrageous here is the notion that

7    someone engages in a scheme to hide documents, hide assets, and

8    because it takes years for us to get these documents through

9    MLAT requests and other requests that it's somehow on us that

10   the respondent chose to hide documents.  That's what I find

11   outrageous here.

12           THE COURT:  If the government received enough

13   information apparently from other sources, presumably enough

14   information to indict Ms. Doyle, why does it need to coerce her

15   compliance with the subpoena other than for punitive reasons?

16           MR. LENOW:  Your Honor, I said the focus is this

17   Justino entity.  As I mentioned, we simply do not know where

18   this account is.  We have a very limited slice of documents,

19   which we provided to the Court, but there probably are more

20   important documents to the Court, and defense counsel has

21   everything, but we were only able to get a small subset of

22   these documents because the management entity was given some

23   part of due diligence, there's a another whole world out there,

24   and we don't even have any substantial documents postdating

25   2010.  A lot of documents we have there, some in the 2006-2007

# ATTACHMENT   B

Form **3520**

Department of the Treasury
Internal Revenue Service

## Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts

▶ See separate instructions.

OMB No. 1545-0159

**2010**

**Note.** All information must be in English. Show all amounts in U.S. dollars. File a separate Form 3520 for each foreign trust.

For calendar year 2010, or tax year beginning _____, 2010, ending _____, 20 _____

A Check appropriate boxes: [X] Initial return [ ] Final return [ ] Amended return

B Check box that applies to person filing return: [X] Individual [ ] Partnership [ ] Corporation [ ] Trust [ ] Executor

**Check all applicable boxes:**

[ ] **(a)** You are a U.S. transferor who, directly or indirectly, transferred money or other property during the current tax year to a foreign trust, **(b)** You held an outstanding obligation of a related foreign trust (or a person related to the trust) issued during the current tax year, that you reported as a "qualified obligation" (defined in the instructions) during the current tax year, or **(c)** You are the executor of the estate of a U.S. decedent and (1) the decedent made a transfer to a foreign trust by reason of death, (2) the decedent was treated as the owner of any portion of a foreign trust immediately prior to death, or (3) the decedent's estate included any portion of the assets of a foreign trust. **Complete all applicable identifying information requested below and Part I of the form and see the instructions for Part I.**

[ ] You are a U.S. owner of all or any portion of a foreign trust at any time during the tax year. **Complete all applicable identifying information requested below and Part II of the form and see the instructions for Part II.**

[X] **(a)** You are a U.S. person who, during the current tax year, received a distribution from a foreign trust, or **(b)** You are a U.S. person and you are also a grantor or beneficiary of a foreign trust that has made a loan of cash or marketable securities directly or indirectly to you during the current tax year that you reported as a "qualified obligation" (defined in the instructions) during the current tax year. **Complete all applicable identifying information requested below and Part III of the form and see the instructions for Part III.**

[ ] You are a U.S. person who, during the current tax year, received certain gifts or bequests from a foreign person. **Complete all applicable identifying information requested below and Part IV of the form and see the instructions for Part IV.**

Service Center where U.S. person's income tax return is filed ▶ HARTFORD, CT

| 1a | Name of person(s) filing return (see instructions) <br> LACY DOYLE | b | Identification number |
|---|---|---|---|
| c | Number, street, and room or suite no. (if a P.O. box, see instructions) <br> ONE LINCOLN PLAZA, APT 37P | d | Spouse's identification number |

| e | City or town <br> NEW YORK | f | State or province <br> NY | g | ZIP or postal code <br> 10023 | h | Country <br> UNITED STATES |
|---|---|---|---|---|---|---|---|

| 2a | Name of foreign trust (if applicable) <br> GESTINO FONDATION | b | Employer identification number (if any) |
|---|---|---|---|
| c | Number, street, and room or suite no. (if a P.O. box, see instructions) | | |

| d | City or town | e | State or province | f | ZIP or postal code | g | Country |
|---|---|---|---|---|---|---|---|

| 3 | Did the foreign trust appoint a U.S. agent (defined in the instructions) who can provide the IRS with all relevant trust information? ... [ ] Yes [X] No | | |
|---|---|---|---|
| | If "Yes," complete lines 3a through 3g. | | |
| 3a | Name of U.S. agent | b | Identification number (if any) |
| c | Number, street, and room or suite no. (if a P.O. box, see instructions) | | |

| d | City or town | e | State or province | f | ZIP or postal code | g | Country |
|---|---|---|---|---|---|---|---|

| 4a | Name of U.S. decedent (see instr.) | b | Address | c | TIN of decedent |
|---|---|---|---|---|---|
| d | Date of death | | | e | EIN of estate |

COPY

f Check applicable box:
[ ] U.S. decedent made transfer to a foreign trust by reason of death.
[ ] U.S. decedent treated as owner of foreign trust immediately prior to death.
[ ] Assets of foreign trust were included in estate of U.S. decedent.

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including any accompanying reports, schedules, or statements, and to the best of my knowledge and belief, it is true, correct, and complete.

▶ Signature _____  ▶ Title _____  ▶ Date _____

**Paid Preparer Use Only**

| Print/Type preparer's name <br> JEFF CALLAHAN | Preparer's signature <br> JEFF CALLAHAN | Date | Check [ ] if self-employed | PTIN |
|---|---|---|---|---|
| Firm's name ▶ BEDERSON & COMPANY LLP | | | Firm's EIN ▶ | |
| Firm's address ▶ 405 NORTHFIELD AVENUE <br> WEST ORANGE NJ 07052-3003 | | | Phone no. (973) 736-3333 | |

013301
01-17-11

LHA **For Privacy Act and Paperwork Reduction Act Notice, see instructions.**

Form **3520** (2010)

USLD001506

BEDERSON 00154

Form 3520 (2010) LACY DOYLE ████████ Page 2

## Part I   Transfers by U.S. Persons to a Foreign Trust During the Current Tax Year (see instructions)

| 5a Name of trust creator | b Address | c Identification number (if any) |
|---|---|---|
| | | |

| 6a Country code of country where trust was created | b Country code of country whose law governs the trust | c Date trust was created |
|---|---|---|
| | | |

**7a** Will any person (other than the U.S. transferor or the foreign trust) be treated as the owner of the transferred assets after the transfer? ☐ Yes ☐ No

**b**

| (i) Name of other foreign trust owners, if any | (ii) Address | (iii) Country of residence | (iv) Identification number, if any | (v) Relevant Code section |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**8** Was the transfer a completed gift or bequest? If "Yes," see instructions .................................................. ☐ Yes ☐ No

**9a** Now or in the future, can any part of the income or corpus of the trust benefit any U.S. beneficiary? ..................... ☐ Yes ☐ No

**b** If "No," could the trust be revised or amended to benefit a U.S. beneficiary? .............................................. ☐ Yes ☐ No

**10** Will you continue to be treated as the owner of the transferred asset(s) after the transfer? ............................ ☐ Yes ☐ No

### Schedule A - Obligations of a Related Trust (see instructions)

**11a** During the current tax year, did you transfer property (including cash) to a related foreign trust in exchange for an obligation of the trust or an obligation of a person related to the trust (see instructions)? ..................... ☐ Yes ☐ No

If "Yes," complete the rest of Schedule A, as applicable. If "No," go to Schedule B.

**b** Were any of the obligations you received (with respect to a transfer described in 11a above) qualified obligations? ......... ☐ Yes ☐ No

If "Yes," complete the rest of Schedule A with respect to each qualified obligation.

If "No," go to Schedule B and, when completing columns (a) through (i) of line 13 with respect to each nonqualified obligation, enter "-0-" in column (h).

| (i) Date of transfer giving rise to obligation | (ii) Maximum term | (iii) Yield to maturity | (iv) FMV of obligation |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**12** With respect to each qualified obligation you reported on line 11b: Do you agree to extend the period of assessment of any income or transfer tax attributable to the transfer, and any consequential income tax changes for each year that the obligation is outstanding, to a date 3 years after the maturity date of the obligation? ........................... ☐ Yes ☐ No

**Note.** Generally, you must answer "Yes," if you checked "Yes" to the question on line 11b.

### Schedule B - Gratuitous Transfers (see instructions)

**13** During the current tax year, did you make any transfers (directly or indirectly) to the trust and receive less than FMV, or no consideration at all, for the property transferred? .......................................................... ☐ Yes ☐ No

If "Yes," complete columns (a) through (i) below and the rest of Schedule B, as applicable.

If "No," go to Schedule C.

| (a) Date of transfer | (b) Description of property transferred | (c) FMV of property transferred | (d) U.S. adjusted basis of property transferred | (e) Gain recognized at time of transfer | (f) Excess, if any, of column (c) over the sum of columns (d) and (e) | (g) Description of property received, if any | (h) FMV of property received | (i) Excess of column (c) over column (h) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| Totals ▶ | | | | | $ | | | $ |

**14** You are required to attach a copy of each sale or loan document entered into in connection with a transfer reported on line 13. If these documents have been attached to a Form 3520 filed within the previous 3 years, attach only relevant updates.

| | Are you attaching a copy of: | Yes | No | Attached Previously | Year Attached |
|---|---|---|---|---|---|
| a | Sale document? ............................................... | ☐ | ☐ | ☐ | |
| b | Loan document? .............................................. | ☐ | ☐ | ☐ | |
| c | Subsequent variances to original sale or loan documents? ...... | ☐ | ☐ | ☐ | |

Form **3520** (2010)

013302
01-17-11

USLD001507

BEDERSON 00155

Form 3520 (2010) LACY DOYLE                                                                            Page 3

| **Part II** | **Schedule B – Gratuitous Transfers** *(Continued)* |

Note. Complete lines 15 through 18 only if you answered "No" to line 3.

| 15 | (a) Name of beneficiary | (b) Address of beneficiary | (c) U.S. beneficiary? Yes | No | (d) Identification number, if any |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

| 16 | (a) Name of trustee | (b) Address of trustee | (c) Identification number, if any |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

COPY

| 17 | (a) Name of other persons with trust powers | (b) Address of other persons with trust powers | (c) Description of powers | (d) Identification number, if any |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

18  If you checked "No" on line 3 (or did not complete lines 3a through 3g), you are required to attach a copy of all trust documents as indicated below. If these documents have been attached to a Form 3520-A filed within the previous 3 years, attach only relevant updates.

| | Are you attaching a copy of: | Yes | No | Attached Previously | Year Attached |
|---|---|---|---|---|---|
| a | Summary of all written and oral agreements and understandings relating to the trust?... | ☐ | ☐ | ☐ | |
| b | The trust instrument? ................................................................. | ☐ | ☐ | ☐ | |
| c | Memoranda or letters of wishes? ................................................. | ☐ | ☐ | ☐ | |
| d | Subsequent variances to original trust documents? ...................... | ☐ | ☐ | ☐ | |
| e | Trust financial statements? ........................................................ | ☐ | ☐ | ☐ | |
| f | Other trust documents? .............................................................. | ☐ | ☐ | ☐ | |

| **Schedule C – Qualified Obligations Outstanding in the Current Tax Year** (see instructions) |

19  Did you, at any time during the tax year, hold an outstanding obligation of a related foreign trust (or a person related to the trust) that you reported as a "qualified obligation" in the current tax year? ...................................... ☐ Yes ☐ No

If "Yes," complete columns (a) through (e) below.

| (a) Date of original obligation | (b) Tax year qualified obligation first reported | (c) Amount of principal payments made during the tax year | (d) Amount of interest payments made during the tax year | (e) Does the obligation still meet the criteria for a qualified obligation? Yes | No |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Form 3520 (2010)

013303
01-17-11

USLD001508

BEDERSON 00156

Form 3520 (2010) LACY DOYLE ▮▮▮▮▮▮▮ Page **4**

## Part II   U.S. Owner of a Foreign Trust (see instructions)

**20**

| (a) Name of other foreign trust owners, if any | (b) Address | (c) Country of residence | (d) Identification number, if any | (e) Relevant Code section |
|---|---|---|---|---|
| | | | | |
| | | | | |

**21**

| (a) Country code of country where foreign trust was created | (b) Country code of country whose law governs the foreign trust | (c) Date foreign trust was created |
|---|---|---|
| | | |

**22** Did the foreign trust file Form 3520-A for the current year? ....................................... ☐ Yes  ☐ No

If "Yes," attach the Foreign Grantor Trust Owner Statement you received from the foreign trust.

If "No," to the best of your ability, complete and attach a substitute Form 3520-A for the foreign trust.

See instructions for information on penalties.

**23** Enter the gross value of the portion of the foreign trust that you are treated as owning ..................... ▶ $

## Part III   Distributions to a U.S. Person From a Foreign Trust During the Current Tax Year (see instructions)

**24** Cash amounts or FMV of property received, directly or indirectly, during the current tax year, from the foreign trust (exclude loans included on line 25).

| (a) Date of distribution | (b) Description of property received | (c) FMV of property received (determined on date of distribution) | (d) Description of property transferred, if any | (e) FMV of property transferred | (f) Excess of column (c) over column (e) |
|---|---|---|---|---|---|
| 01/01/2010 | CASH | 12,792. | | 0. | 12,792. |
| 02/15/2010 | CASH | 12,135. | | 0. | 12,135. |
| 03/15/2010 | CASH | 12,257. | | 0. | 12,257. |
| 04/16/2010 | CASH | 12,083. | | 0. | 12,083. |
| | | | | | |
| | | | | | |
| | | | | | |

Totals ............................................................................................ ▶ $  49,267.

**25** During the current tax year, did you (or a person related to you) receive a loan from a related foreign trust (including an extension of credit upon the purchase of property from the trust)? ....................................... ☐ Yes  ☒ No

If "Yes," complete columns (a) through (g) below for each such loan.

**Note.** You are considered to have received a loan if you (or a person related to you) were permitted the uncompensated use of trust property (as described in section 643(i)). See instructions for additional information, including how to complete columns (a) through (g) for such transactions.

| (a) FMV of loan proceeds | (b) Date of original loan transaction | (c) Maximum term of repayment of obligation | (d) Interest rate of obligation | (e) Is the obligation a "qualified obligation?" Yes / No | (f) FMV of qualified obligation | (g) Amount treated as distribution from the trust (subtract column (f) from column (a)) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Total ........................................................................................... ▶ $

**26** With respect to each obligation you reported as a "qualified obligation" on line 25: Do you agree to extend the period of assessment of any income or transfer tax attributable to the transaction, and any consequential income tax changes for each year that the obligation is outstanding, to a date 3 years after the maturity date of the obligation? ☐ Yes  ☒ No

**Note.** Generally, you must answer "Yes" if you checked "Yes" in column (e) of line 25.

**27** Total distributions received during the current tax year. Add line 24, column (f), and line 25, column (g) ..... ▶ $  49,267.

**28** Did the trust, at any time during the tax year, hold an outstanding obligation of yours (or a person related to you) that you reported as a "qualified obligation" in the current tax year? ....................................... ☐ Yes  ☒ No

If "Yes," complete columns (a) through (e) below for each obligation.

| (a) Date of original loan transaction | (b) Tax year qualified obligation first reported | (c) Amount of principal payments made during the tax year | (d) Amount of interest payments made during the tax year | (e) Does the loan still meet the criteria of a qualified obligation? Yes / No |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

013304
01-17-11

Form **3520** (2010)

USLD001509

BEDERSON 00157

Form 3520 (2010) LACY DOYLE                                                                                    Page 5

**Part III    Distributions to a U.S. Person From a Foreign Trust During the Current Tax Year** (Continued)

| | | | | |
|---|---|---|---|---|
| 29 | Did you receive a Foreign Grantor Trust Beneficiary Statement from the foreign trust with respect to a distribution? ............... | ☐ Yes | ☒ No | ☐ N/A |

If "Yes," attach the statement and do not complete the remainder of Part III with respect to that distribution.

If "No," complete Schedule A with respect to that distribution. Also complete Schedule C if you enter an amount greater than zero on line 37.

| | | | | |
|---|---|---|---|---|
| 30 | Did you receive a Foreign Nongrantor Trust Beneficiary Statement from the foreign trust with respect to a distribution? ............... | ☐ Yes | ☒ No | ☐ N/A |

If "Yes," attach the statement and complete either Schedule A or Schedule B below (see instructions).

Also complete Schedule C if you enter an amount greater than zero on line 37 or line 41a.

If "No," complete Schedule A with respect to that distribution. Also complete Schedule C if you enter an amount greater than zero on line 37.

### Schedule A - Default Calculation of Trust Distributions (see instructions)

| | | |
|---|---|---|
| 31 | Enter amount from line 27 ......................................................................................................... | 49,267. |
| 32 | Number of years the trust has been a foreign trust (see instructions)  ▶  4 | |
| 33 | Enter total distributions received from the foreign trust during the 3 preceding tax years (or during the number of years the trust has been a foreign trust, if fewer than 3) ............................................ | |
| 34 | Multiply line 33 by 1.25 ............................................................................................................. | |
| 35 | Average distribution. Divide line 34 by 3 (or the number of years the trust has been a foreign trust, if fewer than 3) and enter the result ............................................................................... | |
| 36 | Amount treated as ordinary income earned in the current year. Enter the smaller of line 31 or line 35 ............. | 49,267. |
| 37 | Amount treated as accumulation distribution. Subtract line 36 from line 31. If -0-, do not complete the rest of Part III ............ | |
| 38 | Applicable number of years of trust. Divide line 32 by 2 and enter the result here ▶ | 2 |

### Schedule B - Actual Calculation of Trust Distributions (see instructions)

| | | |
|---|---|---|
| 39 | Enter amount from line 27 ......................................................................................................... | |
| 40 a | Amount treated as ordinary income in the current tax year .................................................. ▶ | |
| b | Qualified dividends ........................................................................................................... ▶ | |
| 41 a | Amount treated as accumulation distribution. If -0-, do not complete Schedule C, Part III ............. | |
| b | Amount of line 41a that is tax-exempt ................................................................................ ▶ | |
| 42 a | Amount treated as net short-term capital gain in the current tax year ................................. | |
| b | Amount treated as net long-term capital gain in the current tax year ................................. ▶ | |
| c | 28% rate gain ................................................................................................................... | |
| d | Unrecaptured section 1250 gain ........................................................................................ ▶ | |
| 43 | Amount treated as distribution from trust corpus .............................................................. | |
| 44 | Enter any other distributed amount received from the foreign trust not included on lines 40a, 41a, 42a, 42b, and 43 (attach explanation) ............................................................................................................. | |
| 45 | Amount of foreign trust's aggregate undistributed net income .......................................... | |
| 46 | Amount of foreign trust's weighted undistributed net income ........................................... | |
| 47 | Applicable number of years of trust. Divide line 46 by line 45 and enter the result here ▶ | |

### Schedule C - Calculation of Interest Charge (see instructions)

| | | |
|---|---|---|
| 48 | Enter accumulation distribution from line 37 or 41a, as applicable .................................... | 49,267. |
| 49 | Enter tax on total accumulation distribution from line 28 of Form 4970 (attach Form 4970 - see instructions) ... | 17,256. |
| 50 | Enter applicable number of years of foreign trust from line 38 or 47, as applicable ▶ 2.00 (round to nearest half-year) | |
| 51 | Combined interest rate imposed on the total accumulation distribution (see instructions) ............................. | .0941 |
| 52 | Interest charge. Multiply the amount on line 49 by the combined interest rate on line 51 ............................. | 1,624. |
| 53 | Tax attributable to accumulation distributions. Add lines 49 and 52. Enter here and as "additional tax" on your income tax return ................................................................................................................. | 18,880. |

Form 3520 (2010)

013305
01-17-11

USLD001510

BEDERSON 00158

Form 3520 (2010) LACY DOYLE                                                                                                                 ge 6

## Part IV   U.S. Recipients of Gifts or Bequests Received During the Current Tax Year From Foreign Persons
(see instructions)

54   During the current tax year, did you receive more than $100,000 that you treated as gifts or bequests from a
nonresident alien or a foreign estate? See instructions for special rules regarding related donors and gifts or
bequests from "covered expatriates" .........................................................................................................   ☐ Yes   ☐ No

If "Yes," complete columns (a) through (c) with respect to each such gift or bequest in excess of $5,000. If more
space is needed, attach schedule.

| (a) Date of gift or bequest | (b) Description of property received | (c) FMV of property received |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Total ..................................................................................................................... ▶ $

55   During the current tax year, did you receive more than $14,165 that you treated as gifts from a foreign corporation
or a foreign partnership? See instructions regarding related donors .........................................................   ☐ Yes   ☐ No

If "Yes," complete columns (a) through (g) with respect to each such gift. If more space is needed, attach schedule.

| (a) Date of gift | (b) Name of foreign donor | (c) Address of foreign donor | (d) Identification number, if any |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

| (e) Check the box that applies to the foreign donor | | (f) Description of property received | (g) FMV of property received |
|---|---|---|---|
| Corporation | Partnership |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

56   Do you have any reason to believe that the foreign donor, in making any gift or bequest described in lines 54 and
55, was acting as a nominee or intermediary for any other person? If "Yes," see instructions ............................   ☐ Yes   ☐ No

57   During the current tax year, did you receive a "covered gift or bequest" (as defined in section 2801(e)) of more than
$13,000 from a "covered expatriate" (as defined in section 877A(g)(1)) (see instructions)? .............................   ☐ Yes   ☐ No

If "Yes," complete and file Form 708, U.S. Return of Tax for Gifts and Bequests Received From Expatriates.

Form **3520** (2010)

013308
01-17-11

USLD001511

BEDERSON 00159

## ATTACHMENT   C



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Mail: P.O. Box 5231, Princeton, NJ 08543-5231

Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Tel 609.896.3600  Fax 609.896.1469
www.foxrothschild.com

Alan Leibman
Direct Dial: (609) 895-6743
Email Address: aleibman@foxrothschild.com

October 4, 2011

*VIA FEDERAL EXPRESS*
Mr. Jeffrey E. Callahan
Bederson & Co.
405 Northfield Avenue
West Orange, New Jersey 07052

Re:    Lacy Doyle, taxpayer -- 2010 return preparation

Dear Jeff:

I am enclosing documents, including your office's tax organizer, relating to the preparation of Lacy Doyle's 2010 returns. I trust that your staff will find in these documents sufficient information to enable the necessary preparation, but if not, please have your staff contact me in the event that follow-up is necessary.



California    Connecticut    Delaware    Florida    Nevada    New Jersey    New York    Pennsylvania



Fox Rothschild LLP
ATTORNEYS AT LAW

Mr. Jeffrey E. Callahan
October 4, 2011
Page 2

As I understand that your office will be preparing for filing a Form 3520 for 2010, I would expect the correct answer to Item 8 would be "yes."

With regard to the Form 3520, I understand that the total distributions for 2010 from the Gestino Foundation trust to Ms. Doyle were in the aggregate 35,597 Euros, as follows:

> 4/16/10  8,900 euros
> 3/15/10  8,899 euros
> 2/15/10  8,899 euros
> 1/19/10  8,899 euros

I would suggest using the then-current conversion rate for each date to calculate the total dollar distribution.

Please feel free to call with any questions.

Very truly yours,

Alain Leibman

AL/bc
Enclosures
cc:    Charles E. Falk, Esq. (*w/o encs.*)

*Assume A+I*

*Default calc*

# ATTACHMENT   D



**Bederson & Company LLP**
CERTIFIED
PUBLIC
ACCOUNTANTS
CONSULTANTS

405 Northfield Avenue
West Orange, New Jersey 07052
(973) 736-3333  Fax: (973) 736-3367, 8786

August 1, 2012

Department of Treasury
Internal Revenue Service
Philadelphia, PA  19255

        RE:    Lacy D Doyle
             SS#: ▮▮▮▮▮▮▮
             Ref #: 0531927086

Dear Sir or Madame,

The above-mentioned taxpayer has asked us to respond to your notice, dated July 9, 2012, a copy of which is enclosed.

On behalf of the above mentioned taxpayer, per your request, please find enclosed a completed page 1 of Form 3520.

If you should need any additional information I can be contacted at (973) 736-3333.

Thank you in advance for your assistance in this matter.

Very truly yours,

BEDERSON & COMPANY LLP

Jeffrey E. Callahan, JD, CPA, CFP®
For the Firm

JEC:ptt
Encl.

Member of AGN International with offices in principal cities worldwide and the AICPA Division for CPA Firms

USLD001772

BEDERSON 00420

**IRS** Department of the Treasury
Internal Revenue Service

PHILADELPHIA  PA  19255-0725

LACY D DOYLE
1 LINCOLN PLZ APT 37P
NEW YORK  NY  10023-7140

COPY

CUT OUT AND RETURN THE VOUCHER IMMEDIATELY BELOW IF YOU ONLY HAVE AN INQUIRY.
DO NOT USE IF YOU ARE MAKING A PAYMENT.

CUT OUT AND RETURN THE VOUCHER AT THE BOTTOM OF THIS PAGE IF YOU ARE MAKING A PAYMENT,
EVEN IF YOU ALSO HAVE AN INQUIRY.

---

The IRS address must appear in the window.          Use for inquiries only
                            0531927086              Letter Number:    LTR3653C
         BODCD-SB                                   Letter Date  :    2012-07-09
                                                    Tax Period   :    201012



LACY D DOYLE
1 LINCOLN PLZ APT 37P
NEW YORK  NY  10023-7140

INTERNAL REVENUE SERVICE

PHILADELPHIA PA  19255-0725

NP DOYL 68 0 201012 670 0000000000

---

The IRS address must appear in the window.          Use for payments
                            0531927086              Letter Number:    LTR3653C
         BODCD-SB                                   Letter Date  :    2012-07-09
                                                    Tax Period   :    201012



LACY D DOYLE
1 LINCOLN PLZ APT 37P
NEW YORK  NY  10023-7140

INTERNAL REVENUE SERVICE

KANSAS CITY  MO  64999-0202

NP DOYL 68 0 201012 670 0000000000

USLD001773

BEDERSON 00421

 **IRS** Department of the Treasury
Internal Revenue Service

PHILADELPHIA   PA   19255-0725

```
In reply refer to:  0531927086
July 09, 2012  LTR 3653C    0
          ████████ V 201012 68
                       00046653
                  BODC: SB
```

LACY D DOYLE
1 LINCOLN PLZ APT 37P
NEW YORK   NY   10023-7140

```
Taxpayer Identification Number:  ████████
              Tax Period:  Dec. 31, 2010
                    Form:  3520
```

Dear Taxpayer:

On Form 3520, you indicated that you were a U.S. owner of all or any portion of a foreign trust at some time during the tax year. Please complete Page 1, Lines 2a through 2g and send it to us with a copy of this letter.

Please provide the information requested within 30 days from the date of this letter. Mail it to the address shown in the letter heading. If no response is received, we will continue to process your information return and consider it to be in non-compliance with IRC section 6048(b).

If you have any questions, please call Customer Service at 267-941-1000 Mon-Fri between the hours of 6:00 a.m. and 11:00 p.m. EDT. This is not a toll-free number.

If you prefer, you may write to us at the address shown at the top of the first page of this letter, and include your telephone number with the hours we can reach you. Please keep a copy of this letter for your records.

Telephone Number ( )_____ Hours_____

We apologize for any inconvenience we may have caused you, and thank you for your cooperation.



USLD001774

BEDERSON 00422

```
                                                    0531927086
                    July 09, 2012  LTR 3653C    0
                    ▬▬▬▬▬▬▬ 201012 68
                                              00046654
```

```
LACY D DOYLE
1 LINCOLN PLZ APT 37P
NEW YORK  NY  10023-7140
```

Sincerely yours,



Randal S. Lutz
Program Manager

520

Enclosure(s):
Copy of this letter
Envelope
Form 3520

COPY

Form **3520**

Department of the Treasury
Internal Revenue Service

## Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts
▶ See separate instructions.

OMB No. 1545-0159

**2010**

**Note.** All information must be in English. Show all amounts in U.S. dollars. File a **separate** Form 3520 for **each** foreign trust.

For calendar year 2010, or tax year beginning _____ , 2010, ending _____ , 20 _____

**A** Check appropriate boxes: [X] Initial return  [ ] Final return  [ ] Amended return

**B** Check box that applies to person filing return: [X] Individual  [ ] Partnership  [ ] Corporation  [ ] Trust  [ ] Executor

**Check all applicable boxes:**

[ ] **(a)** You are a U.S. transferor who, directly or indirectly, transferred money or other property during the current tax year to a foreign trust, or **(b)** You held an outstanding obligation of a related foreign trust (or a person related to the trust) issued during the current tax year, that you reported as a "qualified obligation" (defined in the instructions) during the current tax year, or **(c)** You are the executor of the estate of a U.S. decedent and (1) the decedent made a transfer to a foreign trust by reason of death, (2) the decedent was treated as the owner of any portion of a foreign trust immediately prior to death, or (3) the decedent's estate included any portion of the assets of a foreign trust. **Complete all applicable identifying information requested below and Part I of the form and see the instructions for Part I.**

[ ] You are a U.S. owner of all or any portion of a foreign trust at any time during the tax year. **Complete all applicable identifying information requested below and Part II of the form and see the instructions for Part II.**

[X] **(a)** You are a U.S. person who, during the current tax year, received a distribution from a foreign trust, or **(b)** You are a U.S. person and you are also a grantor or beneficiary of a foreign trust that has made a loan of cash or marketable securities directly or indirectly to you during the current tax year that you reported as a "qualified obligation" (defined in the instructions) during the current tax year. **Complete all applicable identifying information requested below and Part III of the form and see the instructions for Part III.**

[ ] You are a U.S. person who, during the current tax year, received certain gifts or bequests from a foreign person. **Complete all applicable identifying information requested below and Part IV of the form and see the instructions for Part IV.**

Service Center where U.S. person's income tax return is filed   ▶ HARTFORD, CT

| 1a Name of person(s) filing return (see instructions) | b Identification number |
|---|---|
| LACY DOYLE | ███████ |

| c Number, street, and room or suite no. (if a P.O. box, see instructions) | | | d Spouse's identification number |
|---|---|---|---|
| ONE LINCOLN PLAZA, APT 37P | | | |

| e City or town | f State or province | g ZIP or postal code | h Country |
|---|---|---|---|
| NEW YORK | NY | 10023 | UNITED STATES |

| 2a Name of foreign trust (if applicable) | b Employer identification number (if any) |
|---|---|
| GESTINO FOUNDATION | N/A |

| c Number, street, and room or suite no. (if a P.O. box, see instructions) | | |
|---|---|---|
| CALLE COLON PUNTA PACIFICA | | |

| d City or town | e State or province | f ZIP or postal code | g Country |
|---|---|---|---|
| PANAMAN CITY | | | PANAMA |

**3** Did the foreign trust appoint a U.S. agent (defined in the instructions) who can provide the IRS with all relevant trust information? If "Yes," complete lines 3a through 3g.   [ ] Yes  [X] No

| 3a Name of U.S. agent | b Identification number (if any) |
|---|---|
| | |

| c Number, street, and room or suite no. (if a P.O. box, see instructions) | | |
|---|---|---|
| | | |

| d City or town | e State or province | f ZIP or postal code | g Country |
|---|---|---|---|
| | | | |

| 4a Name of U.S. decedent (see instr.) | b Address | c TIN of decedent |
|---|---|---|
| | | |
| d Date of death | | e EIN of estate |
| | | |

**f** Check applicable box:

[ ] U.S. decedent made transfer to a foreign trust by reason of death.
[ ] U.S. decedent treated as owner of foreign trust immediately prior to death.
[ ] Assets of foreign trust were included in estate of U.S. decedent.

| **Sign Here** | Under penalties of perjury, I declare that I have examined this return, including any accompanying reports, schedules, or statements, and to the best of my knowledge and belief, it is true, correct, and complete. | | |
|---|---|---|---|
| | ▶ Signature | Title | Date |

| **Paid Preparer Use Only** | Print/Type preparer's name JEFF CALLAHAN | Preparer's signature | Date | Check [ ] if self-employed | PTIN ███████ |
|---|---|---|---|---|---|
| | Firm's name ▶ BEDERSON & COMPANY LLP | | | Firm's EIN ▶ ███████ | |
| | Firm's address ▶ 405 NORTHFIELD AVENUE, WEST ORANGE, NJ 07052-3003 | | | Phone no. (973) 736-3333 | |

For Privacy Act and Paperwork Reduction Act Notice, see instructions.

(HTA)

Form **3520** (2010)

USLD001776

BEDERSON 00424